744 So.2d 467 (1999)
UNITED STATES FIDELITY & GUARANTY COMPANY, Appellant,
v.
Juan and Julia ROMAY, Alfredo Marti, Adrian Kerti Appellees,
Elvia Rivero, Appellant,
v.
United States Fidelity & Guaranty Company, Appellee.
Nos. 98-648, 98-1460 and 98-325.
District Court of Appeal of Florida, Third District.
August 25, 1999.
Rehearing Denied November 18, 1999.
*468 Adorno & Zeder and Raoul G. Cantero III, and Jonathan D. Colan; William Fawcett (Baltimore, MD), for appellant USF & G.
Ress, Mintz & Truppman and Michael J. Higer and Scott R. Clein; St Louis, Guerra & Auslander P.A. and Charles M. Auslander and Alicia M. Santana, for appellant Rivero.
Ress, Mintz & Truppman and Michael J. Higer and Scott R. Clein, for appellee Romay; Charles M. Auslander and John F. Cosgrove, for appellees Marti and Kerti.
Before SCHWARTZ, C.J., and NESBITT, JORGENSON, COPE, LEVY, GERSTEN, GODERICH, GREEN, FLETCHER, SHEVIN, and SORONDO, JJ.

ON EN BANC CONSIDERATION
JORGENSON, J.
The issues presented by these three cases are identical, and we consider them together, en banc, in order to provide uniform treatment and disposition. In Romay and Marti, the insurer appeals from a nonfinal order granting a petition to compel appraisal. In Rivero, the insured appeals from an adverse summary judgment finding the insured's petition to compel appraisal premature. The present state of the law in this district requires trial courts to grant appraisals under the policies upon the sole condition that the insured files a sworn proof of loss.[1] Today, we recede from that position and hold that the insured must meet all of the policy's post-loss obligations before appraisal may be compelled.[2] Based upon this holding and *469 for the reasons that follow, the trial courts' orders in Romay and Marti granting the insureds' petitions to compel appraisal are reversed and the trial court's order in Rivero granting summary judgment in favor of the insurer is affirmed.
In each case, a home was damaged by Hurricane Andrew in August, 1992. In October, 1992, the insurer, United States Fidelity and Guaranty Co. ("USF & G"), paid each insured's claim. After a period of four to five years, USF & G received notice that the insureds disputed the amount of loss, demanded additional compensation, and intended to invoke the appraisal clause if payment was not made. USF & G responded by advising the insureds that the policy required them to meet certain prerequisites before the appraisal clause was triggered, such as: submit a sworn proof of loss and supporting documents; submit to an examination under oath; and make the property available for inspection. The Romays and Ms. Rivero submitted only an unsworn damage estimate; Mr. Marti submitted nothing until the day the trial judge granted his motion to compel appraisal; he then filed a sworn proof of loss. After receiving USF & G's response, the insureds all filed petitions to compel appraisal.[3]
When a party refuses to arbitrate a dispute in accordance with the policy's arbitration clause, the other party may bring an action to compel arbitration. See Florida Arbitration Code, § 682.03, Fla. Stat. (1995). Appraisal provisions in insurance policies such as the one in the instant case have generally been treated as arbitration provisions. See Gray Mart, Inc. v. Fireman's Fund Ins., 703 So.2d 1170, 1172 (Fla. 3d DCA 1997). See also Florida Farm Bureau Cas. Ins. Co. v. Sheaffer, 687 So.2d 1331, 1333 (Fla. 1st DCA 1997); State Farm Fire & Cas. Co. v. Middleton, 648 So.2d 1200, 1202 (Fla. 3d DCA 1995); Intracoastal Ventures Corp. v. Safeco Ins. Co. of Am., 540 So.2d 162, 164 (Fla. 4th DCA 1989). The insureds contend that USF & G's insistence upon their compliance with the policy's post-loss obligations before considering appraisal is a refusal to arbitrate so as to mandate appraisal. However, before a court can compel a party to participate in arbitration there must first exist an arbitrable issue. See § 682.03, Fla. Stat. (1995); Phillips v. General Accident Ins. Co. of Am., 685 So.2d 27, 29 (Fla. 3d DCA 1996) (interpreting the Florida Arbitration Code, § 682.03, Fla. Stat. (1987) as limiting the courts' consideration of claims for arbitration to 1) whether a valid written agreement exists containing an arbitration clause; 2) whether an arbitrable issue exists; and 3) whether the right to arbitrate was waived); Chicago Ins. Co. v. Tarr, 638 So.2d 106 (Fla. 3d DCA 1994) (quoting Piercy v. School Bd. of Wash. County, 576 So.2d 806 (Fla. 1st DCA 1991)).
Arbitrable issues involved with appraisal, by their nature, are narrowly restricted to the resolution of specific issues of actual cash value and amount of loss. See Preferred Ins. Co. v. Richard Parks Trucking Co., 158 So.2d 817 (Fla. 2d DCA 1963) (comparing the narrow focus of appraisal with the broad character of arbitration which may encompass the disposition of the entire controversy between the parties). It is therefore axiomatic that an arbitrable issue exists between parties whose agreement provides for appraisal when there is a disagreement in the dollar amount of the loss being claimed.
The appraisal clause in the parties' agreement provides: "If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss...." By these terms, the disagreement necessary *470 to trigger appraisal cannot be unilateral. As expressly indicated in the parties' agreement, the failure to agree must be between the "you" and the "we." In other words, by the terms of the contract, it was contemplated that the parties would engage in some meaningful exchange of information sufficient for each party to arrive at a conclusion before a disagreement could exist. See Ferrer v. Fidelity & Guar.Ins. Co., 10 F.Supp.2d 1324 (S.D.Fla. 1998) (finding that the insurer's demand for compliance with all of the policy's post-loss obligations, in response to the insured's request for appraisal, was not a disagreement with the amount of loss but simply a request for further information); Pando v. United States Fidelity & Guar. Co., 11 Fla. L. Weekly Fed. D792, 1998 WL 708619 (S.D. Fla.1998); Terra Indus., Inc. v. Commonwealth Ins. Co. of Am., 981 F.Supp. 581 (N.D.Iowa 1997). See also Jersey Ins. Co. v. Roddam, 256 Ala. 634, 56 So.2d 631 (1951); Boston Ins. Co. v. A.H. Jacobson Co., 226 Minn. 479, 33 N.W.2d 602 (1948); Insurance Co. of N. Am. v. Baker, 84 Colo. 53, 268 P. 585 (1928); Harowitz v. Concordia Fire Ins. Co., 129 Tenn. 691, 168 S.W. 163 (1914); Ohio Farmers' Ins. Co. v. Titus, 82 Ohio St. 161, 92 N.E. 82 (1910); James v. Insurance Co. of Ill., 135 Mo.App. 247, 115 S.W. 478 (1909); Continental Ins. Co. v. Vallandingham & Gentry, 116 Ky. 287, 76 S.W. 22 (1903). But see Prudential-LMI Ins. Co. v. Promenade Condo. Ass'n, No. 98-1603 (S.D.Fla. Oct. 20, 1998) (ruling contrary to Ferrer, 10 F.Supp.2d at 1324 so as to remain consistent with Sierra, 705 So.2d at 119); Sanchez v. Harbor Specialty Ins. Co., No. 98-1365 (S.D.Fla. Feb. 18, 1999). As explained in 14 Couch on Insurance 2d § 50:56 (1982):
This means that the existence of a real difference in fact, arising out of an honest effort to agree between the insured and the insurer, is necessary to render operative a provision in a policy for arbitration of differences. Furthermore, there must be an actual and honest effort to reach an agreement between the parties, as it is only then that the clause for arbitration becomes operative, the remedies being successive. For example, a mere arbitrary refusal to pay the amount demanded, and the offer of a less amount, without any attempt upon the part of the insurer to ascertain and estimate the amount of loss and damage, do not constitute such a disagreement as is contemplated.
Id.
The exchange of information sufficient for USF & G to arrive at a conclusion was also contemplated by the parties. Specifically, the insurance contract places certain post-loss obligations upon the insureds:
2. Your duties after loss. In case of a loss to covered property, you must see that the following are done:
a. give prompt notice to us or our agent;
. . . .
d. (1) protect the property from further damage;
(2) make reasonable and necessary repairs to protect the property; and
(3) keep an accurate record of repair expenses;
e. prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;
f. as often as we reasonably require:
(1) show the damaged property;
(2) provide us with records and documents we request and permit us to make copies; and
(3) submit to questions under oath and sign and swear to them;
g. send to us, within 60 days after our request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:
(1) the time and cause of loss;

*471 (2) the interest of the insured and all others in the property involved and all liens on the property;
(3) other insurance which may cover the loss;
(4) changes in title or occupancy of the property during the term of the policy;
(5) specifications of damaged buildings and detailed repair estimates;
(6) the inventory of damaged personal property described in 2e above;
(7) receipts for additional living expenses incurred and records that support the fair rental value loss; and
. . . .
These obligations are not unduly burdensome or arbitrary and constitute assurance that the insurer will be provided with adequate information on which to base its conclusion.
A provision in the insurance policy addressing lawsuits brought against USF & G states: "No action can be brought unless the policy provisions have been complied with and the action is started within one year after the date of loss." However, the appraisal clause makes no reference to complying with the policy provisions in its discussion of the appraisal process. Nevertheless, such an omission cannot be reasonably interpreted to mean, as the insureds would have us believe, that the insurer did not intend to place any conditions precedent to appraisal; nor can this omission be construed as to create an ambiguity.
Any ambiguity found in an insurance policy is construed strictly against its drafter and liberally in favor of the insured. See Prudential Property & Cas. v. Swindal, 622 So.2d 467, 470 (Fla.1993); Gulf Life Ins. Co. v. Nash, 97 So.2d 4, 9-10 (Fla.1957); Pasteur Health Plan, Inc. v. Salazar, 658 So.2d 543, 545 (Fla. 3d DCA 1995). "Ambiguity," in this context, has been defined by the Florida Supreme Court as being a word or phrase which is reasonably susceptible to interpretation in opposite ways. See Friedman v. Virginia Metal Prod. Corp., 56 So.2d 515, 517 (Fla. 1952). We do not agree that the terms of the policy at issue here meet this definition.
No reasonable and thoughtful interpretation of the policy could support compelling appraisal without first complying with the post-loss obligations. If that were so, a policyholder, after incurring a loss, could immediately invoke appraisal and secure a binding determination as to the amount of loss. That determination, in turn, could be enforced in the courts. Under that framework, expressed and agreed-upon terms of the contract, i.e., the post-loss obligations, would be struck from the contract by way of judicial fiat and the bargained-for contractual terms would be rendered surplusage.[4] There exists but one reasonable interpretation of the terms of the policy at issue here: The insured must comply with all of the policy's post-loss obligations before the appraisal clause is triggered. See Restatement (Second) of Contracts § 203 (1981) ("In the interpretation of a promise or an agreement or a term thereof ... (a) an interpretation which gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect ....") (emphasis added).[5]
*472 For the reasons stated above, we reverse the orders in Romay and Marti and remand with directions that the trial court require compliance with the policy's preconditions to appraisal before granting motions to compel appraisal. We affirm the order in Rivero. We recede from our opinion in Allstate Ins. Co. v. Sierra, 705 So.2d 119 (Fla. 3d DCA 1998) and its progeny.
We remand for further proceedings consistent with the views expressed in this opinion.
SCHWARTZ, Chief Judge (specially concurring).
Although I authored (and of course believed in) Sierra and several of its ill-conceived descendants, Judge Jorgenson's unanswerable opinion makes it necessary to recognize this instance as the only exception to my self-description as "often reversed, never convinced."
NOTES
[1] See Allstate Ins. Co. v. Sierra, 705 So.2d 119 (Fla. 3d DCA 1998); Perez v. Allstate Ins. Co., 709 So.2d 591 (Fla. 3d DCA 1998); Llaguno v. ARI Mutual Ins. Co., 719 So.2d 311 (Fla. 3d DCA 1998); Harrah v. Allstate Ins. Co., 721 So.2d 1266 (Fla. 3d DCA 1999).
[2] See the special concurrence of Chief Judge Schwartz.
[3] In Rivero, the trial court entered summary judgment against the insured finding that she failed to comply with conditions precedent to compelling appraisal under the policy. The trial court's order preceded Allstate Ins. Co. v. Sierra, 705 So.2d 119 (Fla. 3d DCA 1998). In Romay and Marti, the trial courts followed the precedent of this court established in Sierra by summarily directing appraisal.
[4] Also, permitting the insured to compel appraisal without first complying with the policy's post-loss obligations would place the insurer at a considerable disadvantage entering the appraisal process. The nature of the post-loss obligations is merely to provide the insurer with an independent means by which to determine the amount of loss, as opposed to relying solely on the representations of the insured. Although it is within the appraiser's power to permit documentary discovery and prehearing depositions of witnesses, such discovery issues are matters of grace and are not compelled by the Florida Arbitration Code. See Florida Arbitration Code, § 682.08, Fla. Stat. (1989).
[5] The construction of the relevant portion of the insurance contract also supports this position. Both the post-loss obligations and the appraisal clause are listed in the same "section" of the contract where each provision is consecutively numbered. The consecutively numbered provisions are arranged such that they follow in a chronological order. This section of the contract places conditions for recovery upon the insured from the time the insured files a claim to the time he receives payment under that claim. It is not surprising that the policy's post-loss obligations are listed prior to the appraisal clause.