**[PUBLISH]**

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

_____

No. 97-5856

_____

D. C. Docket No. 97-2302-CV-JAL

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
02/07/00
THOMAS K. KAHN
CLERK

HILDA GALINDO,

Plaintiff-Appellant,

versus

ARI MUTUAL INSURANCE COMPANY,
f.k.a. American Reliance Insurance Company,

Defendant-Appellee.

_____

No. 97-5857

_____

D. C. Docket No. 97-2314-cv-JAL

ALICIA SUAREZ,

Plaintiff-Appellant,

versus

ARI MUTUAL INSURANCE COMPANY,
f.k.a. American Reliance Insurance Company,

Defendant-Appellee.

_____

No. 98-4485

_____

D. C. Docket No. 97-2975-CIV-SH

RAMON FERRER,
MAYRA FERRER,

Plaintiffs-Appellants,

versus

UNITED STATES FIDELITY AND GUARANTY COMPANY,

Defendant-Appellee.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

(February 7, 2000)

Before BIRCH and CARNES, Circuit Judges, MILLS[*], Senior District Judge.

BIRCH, Circuit Judge:

_____

[*]Honorable Richard H. Mills, Senior U.S. District Judge for the Central District of Illinois, sitting by designation.

These consolidated cases present the issue of whether a supplemental claim on a homeowner's insurance policy permits the insurance company to investigate the additional claim before an appraisal is required under the policy. The district judges determined that the insurance companies' investigation of the subsequent claims was a condition precedent to appraisal; consequently, the insureds' appraisal request was premature. We affirm.

## I. BACKGROUND

In the wake of Hurricane Andrew, which struck Dade County, Florida, on August 24, 1992, numerous residential owners made claims on their homeowners' insurance policies for property loss and damage. Three such homeowners and their respective insurance companies are involved in this appeal: Hilda Galindo ("Galindo") and ARI Mutual Insurance Company, formerly, American Reliance Insurance Company ("ARI"); Alicia Suarez ("Suarez") and ARI; and Ramon and Mayra Ferrer ("Ferrer") and United States Fidelity and Guaranty Company ("USF&G"). In 1992, all of these homeowners made claims on their insurance policies following Hurricane Andrew. After investigation, the insurance

companies paid the claims, and payment was accepted by the insureds.[1]

Thereafter, the insurance companies considered these claims settled and closed.

In 1997, all of these homeowners wrote their insurance companies, stated that their previous payments had been insufficient to cover the Hurricane Andrew loss and/or damage to their residences and personal property, and demanded payment of supplemental, sizeable claims on their policies based on unsworn and unsigned estimates purportedly prepared by East Coast Appraisers, Inc. ("East Coast"). The insureds also imposed on the insurance companies an ultimatum: either pay the requested amounts within a few days or submit to appraisal or arbitration under the terms of the policy.[2] In response, the insurance companies promptly informed the insureds that invocation of appraisal was premature prior to an investigation of the claim by the insurance companies. To investigate these supplemental claims after five years had passed since the original Hurricane

---

[1] ARI paid Galindo $14,864 on November 25, 1992, for structural damage to her home and loss of personal property, and it paid Suarez's claim on October 8, 1992. Suarez, however, was dissatisfied with the first payment and submitted a subsequent claim, which ARI paid on June 14, 1993. The cumulative amount paid to Suarez under all coverages provided by her policy was $8,817. The record does not reveal the amount of the1992 payment that USF&G made to the Ferrers.

[2] Galindo's May 5, 1997, letter to ARI demanded payment of $109,296, less the previous payment, within five business days or submission to appraisal. Suarez's May 20, 1997, letter to ARI demanded payment of $85,404, less former payments, within five business days or submission to appraisal. The Ferrers' June 20, 1997, letter to USF&G demanded payment of $161,404.15, less the prior payment, within ten days or submission to appraisal.

4

Andrew payments, the insurance companies requested that the insureds fulfill their obligations under the insurance policies, which included providing a sworn proof of loss with supporting documentation,[3] allowing inspection of the property, and appearing for an examination under oath.

Rather than complying with the insurance companies' requests for information  to permit investigation of the claims, all of the insureds filed complaints in state court and sought declaratory relief by compelling appraisal under their respective policies.  The insurance companies removed the cases to federal court based on diversity jurisdiction and filed motions to dismiss for failure to state a claim for which relief could be granted or for summary judgment based on lack of disagreement regarding the loss amount in the 1997, supplemental Hurricane Andrew claims.  The district judges concluded that the insureds had prevented the insurance companies' investigation of the supplemental claims, which was a condition precedent to either party's demand for appraisal because of failure to agree regarding the loss amount.[4]  Accordingly, the motions to dismiss or

---

[3] Although the East Coast estimate for Galindo and Suarez represented that the report included work accomplished and work to be done with invoices, no invoices were attached and repairs that supposedly had been done were not identified.

[4] The same district judge for the Galindo and Suarez cases quoted the appraisal provision of the ARI homeowner's policy, which is representative of appraisal provisions in homeowner's insurance policies:

Appraisal.  If you and we fail to agree on the amount of loss, either may

5

for summary judgment were granted. On appeal, the insureds pursue their arguments that they are entitled to compel appraisal concerning the loss amount of their supplemental claims based on loss estimates. They also appeal the district judges' denying their motions to amend their complaints.

---

demand an appraisal of the loss. In [that] event, each party will choose a competent appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you and we may request that the choice be made by a judge of a court of record in the state where the residence premises is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

Galindo R1-18-1-2; Suarez R1-20-1-2 (alteration in original). The judge stated that "[n]owhere in [Galindo's] complaint does she suggest that A[RI] disagreed with her as to the value of her loss." Galindo R1-18-3 n.1; Suarez R1-20-3 n.1.

Similarly, the district judge granting summary judgment in Ferrer concluded:

[T]he Ferrers argue that USF&G's request for documentation, examination under oath and sworn proof of loss are sufficient to establish the existence of a disagreement between the parties regarding the amount of loss, thereby making their invocation of the appraisal process appropriate. The pertinent policy provision states, "If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss." The Court finds nothing in USF&G's request that connotes disagreement with the amount of loss claimed by the Ferrers in their demand letter. USF&G's response is nothing more than a request for further information and documentation, in accordance with the terms of the insurance policy, to permit USF&G to evaluate the Ferrers' claim.

Ferrer R1-20-5 (emphasis added).

6

## II. DISCUSSION

We review a district court's granting summary judgment de novo, consider all facts and reasonable inferences in favor of the nonmoving party, and apply the same legal standards used by the district court. See Allison v. McGhan Medical Corp., 184 F.3d 1300, 1306 (11th Cir. 1999). Summary judgment properly was granted when the evidence before the district judge showed that there was no genuine issue concerning any material fact and that the moving party was entitled to judgment as a matter of law. See Carnival Brand Seafood Co. v. Carnival Brands, Inc., 187 F.3d 1307, 1309 (11th Cir. 1999) (citing Fed. R. Civ. P. 56(c)). The interpretation of an insurance contract is a question of law subject to de novo review. See Technical Coating Applicators, Inc. v. United States Fidelity & Guar. Co., 157 F.3d 843, 844 (11th Cir. 1998). We review de novo a district judge's granting a motion to dismiss for failure to state a claim. See Long v. Satz, 181 F.3d 1275, 1278 (11th Cir. 1999) (per curiam). This consists of finding that there is no set of facts that could substantiate the allegations of the complaint; we review the legal conclusions de novo. See Mesocap Ind. Ltd. v. Torm Lines, 194 F.3d 1342, 1343 (11th Cir. 1999).

A federal court applies the substantive law of the forum state in a diversity case, unless federal constitutional or statutory law requires a contrary result. See

Salve Regina College v. Russell, 499 U.S. 225, 226, 111 S.Ct. 1217, 1218 (1991).

Absent a decision by the highest state court or persuasive indication that it would

decide the issue differently, federal courts adhere to intermediate appellate courts in

applying state law.  See Insurance Co. of N. Am. v. Lexow, 937 F.2d 569, 571 (11th

Cir. 1991).  Concomitantly, the Florida Supreme Court has held that "'[t]he

decisions of the district courts of appeal represent the law of Florida unless and

until they are overruled by this Court.'  Thus, in the absence of interdistrict conflict,

district court decisions bind all Florida trial courts."[5]  Pardo v. State, 596 So.2d 665,

---

[5] The Florida Supreme Court also has explained the purpose of this rule and the hierarchy of authority in Florida courts:

> "The District Courts of Appeal are required to follow Supreme Court decisions.  As an adjunct to this rule it is logical and necessary in order to preserve stability and predictability in the law that, likewise, trial courts be required to follow the holdings of higher courts—District Courts of Appeal.  The proper hierarchy of decisional holdings would demand that in the event the only case on point on a district level is from a district other than the one in which the trial court is located, the trial court be required to follow that decision.  Alternatively, if the district court of the district in which the trial court is located has decided the issue, the trial court is bound to follow it.  Contrarily, as between District Courts of Appeal, a sister district's opinion is merely persuasive."

Pardo v. State, 596 So.2d 665, 666-67 (Fla. 1992) (citation omitted).  Indeed, Suarez concedes in her brief: "Due to the discrete genesis of these claims — Hurricane Andrew's devastation of South Florida — there is little likelihood that another district court of appeal will address this issue or take a position contrary to that of the Third District.  Without an inter-district express and direct conflict, this issue is unlikely to reach the Florida Supreme Court from the Third District Court of Appeal."  Appellant Suarez's Brief at 37; see Fla. R. App. P. 9.030(2)(A)(iv) (stating that the Florida Supreme Court has discretionary jurisdiction to review district court of appeals decisions that "expressly and directly conflict with a decision of another district court of appeal").

8

666 (Fla. 1992) (citation omitted) (alteration in original). "The law is settled that a federal appellate court sitting in a diversity case must apply the state law as it exists at the time of the appeal and not at the time of the district court judgment." Kramer v. Piper Aircraft Corp., 868 F.2d 1538, 1541 (11th Cir. 1989).

The Florida Third District Court of Appeal, sitting in Miami, unanimously has decided en banc the precise issue before us in a consolidated case arising from homeowners' supplemental claims against their insurance companies for Hurricane Andrew damage and loss. See United States Fidelity & Guar. Co. v. Romay, 744 So.2d 467 (Fla. Dist. Ct. App. 1999) (en banc). In Romay, the Third District Court of Appeal receded from its prior law that required appraisals based solely on the insured's filing a sworn proof of loss.[6] Instead, the en banc court held "that the insured must meet all of the policy's post-loss obligations before appraisal may be compelled." [7] Id. at 468.

---

[6] In his special concurrence, Chief Judge Schwartz, who authored the former Third District Court of Appeal's seminal case for appellant's position, Allstate Ins. Co. v. Sierra, 705 So.2d 119 (Fla. Dist. Ct. App. 1998), "and several of its ill-conceived descendants" in the Third District Court of Appeal, see, e.g., Hurrah v. Allstate Ins. Co., 721 So.2d 1266 (Fla. Dist. Ct. App. 1999) (per curiam); Llaguno v. ARI Mut. Ins. Co, 719 So.2d 311 (Fla. Dist. Ct. App. 1998) (per curiam); Perez v. Allstate Ins. Co., 709 So. 2d 591 (Fla. Dist. Ct. App. 1998) (per curiam), agreed with "Judge Jorgenson's unanswerable opinion" in Romay. Romay, 744 So.2d at 472 (Schwartz, C.J., specially concurring).

[7] Delineated by the Romay court, the representative USF&G post-loss obligations under its homeowner's policy provide:

2. Your duties after loss. In case of a loss to covered property, you must see that

Appraisal in a homeowner's insurance policy is treated as an arbitration provision, "narrowly restricted to the resolution of specific issues of actual cash value and amount of loss." Id. at 469. Consequently, the en banc court reasoned that it is "axiomatic that an arbitrable issue exists between the parties whose agreement provides for appraisal when there is a disagreement in the dollar amount

---

the following are done:
a. give prompt notice to us or our agent;
....
d. (1) protect the property from further damage;
  (2) make reasonable and necessary repairs to protect the property; and
  (3) keep an accurate record of repair expenses;
e. prepare an inventory of damaged personal property showing the quantity,
  description, actual cash value and amount of loss. Attach all bills, receipts and
   related documents that justify the figures in the inventory;
f. as often as we reasonably require:
  (1) show the damaged property;
  (2) provide us with records and documents we request and permit us to make
     copies; and
  (3) submit to questions under oath and sign and swear to them;
g. send to us, within 60 days after our request, your signed, sworn proof of loss
  which sets forth, to the best of your knowledge and belief:
  (1) the time and cause of loss;
  (2) the interest of the insured and all others in the property involved and all
liens        on the property;
  (3) other insurance which may cover the loss;
  (4) changes in title or occupancy of the property during the term of the policy;
  (5) specifications of damaged buildings and detailed repair estimates;
  (6) the inventory of damaged personal property described in 2e above;
  (7) receipts for additional living expenses incurred and records that support the
     fair rental value loss . . . .

Romay, 744 So.2d at 470-71. The Romay court determined that "[t]hese obligations are not unduly burdensome or arbitrary and constitute assurance that the insurer will be provided with adequate information on which to base its conclusion." Id. at 471. Furthermore, the en banc state appellate court concluded that these post-loss obligations were required as conditions precedent for appraisal and that the policy terms were not ambiguous. See id.

10

of the loss being claimed." Id. That court further recognized that "the disagreement necessary to trigger appraisal cannot be unilateral." Id. at 469-70. Rather, the contract terms "contemplated that the parties would engage in some meaningful exchange of information sufficient for each party to arrive at a conclusion before a disagreement could exist." Id. at 470. Otherwise, an insured, after sustaining a loss, "could immediately invoke appraisal and secure a binding determination as to the amount of loss" and "the post-loss obligations, would be struck from the contract by way of judicial fiat and the bargained-for contractual terms would be rendered surplusage."[8] Id. at 471. The court concluded that "[t]here exists but one reasonable interpretation of the terms of the policy at issue here: The insured must comply with all of the policy's post-loss obligations before the appraisal clause is triggered."[9] Id. In the absence of a Florida Supreme Court decision on this issue

---

[8] The court further explained that

> permitting the insured to compel appraisal without first complying with the policy's post-loss obligations would place the insurer at a considerable disadvantage entering the appraisal process. The nature of the post-loss obligations is merely to provide the insurer with an independent means by which to determine the amount of loss, as opposed to relying solely on the representations of the insured.

Romay, 744 So.2d at 471 n.4.

[9] Nearly ninety years ago, the Florida Supreme Court recognized that express conditions in an insurance contract are part of the consideration for the insurer to assume the risk and that the insured, by accepting the policy, becomes bound by these conditions. See Southern Home Ins. Co. v. Putnal, 49 So. 922, 932-33 (Fla. 1909); see also Shuster v. South Broward Hosp. Dist. Physicians' Prof'l Liability Ins. Trust, 591 So.2d 174, 176 (Fla. 1992) ("The insurer has the duty

11

and finding no conflict with federal constitutional or statutory law, we apply the Florida Third District Court of Appeal's en banc opinion in <u>Romay</u> to the consolidated appeals before us. Therefore, we hold that these insureds must comply with the post-loss terms of their respective homeowner's policies, which enables the insurance companies to investigate the insureds' claims and to disagree with the loss amount before the appraisal term becomes effective.[10]

to investigate the facts and give fair consideration to the claims pending."). Indeed, the Supreme Court has stated with respect to an insured's responsibility to submit to an examination under oath:

> The object of the provisions of the policies of insurance, requiring the insured to submit himself to an examination under oath, to be reduced to writing, was to enable the company to possess itself of all knowledge, and all information as to other sources and means of knowledge, in regard to the facts, material to their rights, and to enable them to decide upon their obligations, and to protect them against false claims.

<u>Claflin v. Commonwealth Ins. Co.</u>, 110 U.S. 81, 94-96, 35 S.Ct. 507, 515 (1884).

[10] Galindo and Suarez also argue on appeal that the district judge abused her discretion in denying their respective motions pursuant to Federal Rule of Civil Procedure 15(a) to amend their complaints. Among the reasons that the Supreme Court has recognized as warranting the denial of a motion to amend is "futility of amendment." <u>Foman v. Davis</u>, 371 U.S. 178, 182, 83 S.Ct. 227, 230 (1962). "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." <u>Jefferson County School Dist. No. R-1 v. Moody's Investor's Servs., Inc.</u>, 175 F.3d 848, 859 (10th Cir. 1999). There is no way that Galindo and Suarez could amend their complaints to obtain the declaratory judgment that they sought in district court because of the Florida Third District Court of Appeal's <u>Romay</u> decision, the basis of our holding in this case. <u>Romay</u> requires that insureds comply with the post-loss provisions of their insurance policies and that there be disagreement between the insured and the insurer before appraisal is appropriate. Thus, the district judge correctly denied their respective motions to amend their complaints.

Suarez also contends that the district judge erred in denying her motion to remand for lack of subject matter jurisdiction pursuant to 28 U.S.C. § 1447(c), because the appraisal remedy that she seeks requires determination and application of state substantive law. In addition to

12

## III. CONCLUSION

These three appeals, <u>Galindo</u>, <u>Suarez</u>, and <u>Ferrer</u>, pose the same issue of

whether an insured's supplemental claim on a homeowner's policy requires

appraisal based on the insured's proof of loss.  The district judges in each of these

cases removed from state court determined that the insured's unilateral loss estimate

without an opportunity for the insurance company to investigate the supplemental

claim was insufficient to constitute a disagreement between the two parties regarding

the amount of loss or damage.  Because we apply Florida law to resolve these

consolidated appeals and the Florida Third District Court of Appeal has decided en

banc in <u>Romay</u> that an insurance company must be given an opportunity to

investigate a supplemental claim before there can be a disagreement between the

---

diversity, under which ARI  removed the underlying state-court action to federal court, 28 U.S.C. § 2201(a) authorizes a federal court "[i]n a case of actual controversy within its jurisdiction . . . [to] declare the rights and other legal relations of any interested party seeking such declaration . . . [and] [a]ny such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." <u>Id.</u>  While the Supreme Court has recognized that "it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, <u>between the same parties</u>," no state court proceeding remains between Suarez and ARI that would give rise to "gratuitous interference" after removal to federal court. <u>Brillhart v. Excess Ins. Co.</u>, 316 U.S. 491, 495, 62 S.Ct. 1173, 1175-76 (1942) (emphasis added).  Furthermore, our decision in this appeal applies the Third District Court of Appeal's <u>Romay</u> decision, which  is the same ruling that Suarez would receive in state court because the state trial court is bound by <u>Romay</u>.  Thus, Suarez's argument that the district judge's denial of her motion to remand to preclude the federal courts from deciding a state-law issue is meritless.

parties regarding the amount of property loss or damage to effectuate appraisal, we AFFIRM.

AFFIRMED.