**GARDEN–AIRE VILLAGE SOUTH CONDOMINIUM ASSOCIATION INC., a Florida corporation, Plaintiff,**

v.

**QBE INSURANCE CORPORATION, a Pennsylvania corporation, Defendant.**

**Case No. 10–61985–CIV.**

United States District Court, S.D. Florida.

March 31, 2011.

Jeffrey N. Golant, Pompano Beach, FL, for Plaintiff.

William Xanttopoulos, William Xanttopoulos, Esq., William S. Berk, Berk Merchant & Sims PLC, Coral Gables, FL, Maria Josefa Beguiristain, Raoul G. Cantero, III, White & Case LLP, Miami, FL, for Defendant.

### ORDER GRANTING MOTION TO DISMISS; STAYING ACTION

WILLIAM P. DIMITROULEAS, District Judge.

THIS CAUSE is before the Court upon Defendant QBE Insurance Corporation's Motion to Dismiss First Amended Complaint and Motion for Entry of a Stay [DE–19], filed herein on January 24, 2011. The Court has carefully considered the Motion, Plaintiff's Opposition [DE–20], De-

fendant's Reply [DE–23], and is otherwise fully advised in the premises.

### I. BACKGROUND

Plaintiff commenced the instant action on October 18, 2010, and filed an amended complaint on December 27, 2010 ("Complaint") [DE–11]. Plaintiff is a Florida, not-for-profit corporation, operating as a condominium association. Plaintiff purchased two insurance policies ("Policies") from Defendant QBE Insurance Corporation ("QBE") which were in effect when Hurricane Wilma struck South Florida on October 24, 2005. Plaintiff alleges that Hurricane Wilma damaged Plaintiff's insured condominium property, including causing damage to windows and sliding glass doors, and that Plaintiff notified QBE of the loss. Plaintiff filed a Civil Remedy Notice ("CRN") against QBE on October 18, 2010. [DE–11–1]. Based upon QBE's response to Plaintiff's CRN [DE–11–2],[1] Plaintiff alleges that QBE claims to have sent Plaintiff's president a letter purporting to memorialize a conversation wherein Plaintiff's president advised that the damages to the property were below the windstorm deductible and that Plaintiff wished to withdraw the claim. Although Plaintiff does not agree with these facts, Plaintiff alleges that these facts demonstrate that QBE never determined the amount of Plaintiff's insured loss. As such, Plaintiff alleges there is a bona fide, actual, present practical need for various declarations concerning the parties' rights and obligations.

Plaintiff asserts three counts. In count I Plaintiff seeks a declaratory judgment establishing that glass windows and sliding glass doors that provide access to a single condominium unit are covered under the Policies. Plaintiff alleges that "QBE did

---

1. Having attached the CRN and QBE's response to the Complaint, pursuant to Federal Rule of Civil Procedure 10(c), they are "part of the pleading for all purposes."

not consider glass windows and sliding glass doors when it determined that the amount of Plaintiff's covered Hurricane Wilma loss was less than the applicable hurricane deductible" and, therefore, "[b]ecause QBE failed to include windows and sliding glass doors in its initial evaluation of Plaintiff's loss, and because it has frequently taken the position in the past that windows and sliding glass doors are not covered under the QBE [Policies] ... Plaintiff is in doubt concerning its right to coverage for the hurricane damage to its glass windows and sliding glass doors." [DE–11, ¶¶ 26, 28].

In count II Plaintiff seeks a declaratory judgment establishing that Plaintiff is entitled to have the dispute concerning the amount of its Hurricane Wilma loss resolved through the appraisal process described in the Policies. Plaintiff alleges that "QBE has never taken a position concerning the precise amount of Plaintiff's claim," but instead "simply concluded (or inappropriately accepted Plaintiff's president's purported conclusion) that the unspecified amount of the coverage damage was less than the deductible." [DE–11, ¶ 31]. Plaintiff further alleges that it never took the position that the amount of loss was less then the deductible, and notified QBE by letter on October 19, 2010 that it disagreed with QBE's position and demanded appraisal, but that QBE has never responded to that letter, identified an appraiser or taken any measures to resolve the dispute through the contractual appraisal process. *Id.* at ¶¶ 32–33, 35. As such, Plaintiff alleges that it is in doubt concerning its right to have the dispute concerning the amount of its loss resolved through appraisal. *Id.* at ¶ 42. Finally, in count III, Plaintiff seeks a declaratory judgment establishing that the hurricane deductible in the Policies is void pursuant to Florida Statutes § 627.701(4) which requires specific disclosures to be made with certain font requirements. Defendant filed the instant Motion on January 24, 2011, arguing that counts I and II should be dismissed and that count III should be stayed.

## II. *DISCUSSION*

### A. Motion to Dismiss Standard

Until the Supreme Court decision in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), courts routinely followed the rule that, "a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff could prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). However, pursuant to *Twombly,* to survive a motion to dismiss, a complaint must now contain factual allegations which are "enough to raise a right to relief above the speculative level ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." 550 U.S. at 555, 127 S.Ct. 1955. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations ... a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* Taking the facts as true, a court may grant a motion to dismiss when, "on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Marshall Cty. Bd. of Educ. v. Marshall Cty. Gas Dist.,* 992 F.2d 1171, 1174 (11th Cir.1993). In *Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 1949–50, 173 L.Ed.2d 868 (2009), the Supreme Court further stated that a court need not accept legal conclusions as true, but only well-pleaded

factual allegations are entitled to an assumption of truth.

## B. QBE's Motion to Dismiss

QBE argues that counts I and II should be dismissed on the following grounds: (1) count I should be dismissed because no justiciable controversy exists, and (2) count II should be dismissed as a premature demand for appraisal. QBE also argues that the Court should stay count III pending the Florida Supreme Court's decision in *QBE Ins. Corp. v. Chalfonte Condo. Apartment Ass'n, Inc.*, No. SC09–441 (Fla.). Plaintiff agrees with QBE's request for a stay of count III and notes that oral argument was held by the Florida Supreme Court in *QBE Ins. Corp. v. Chalfonte Condo. Apartment Ass'n, Inc.*, No. SC09–441, 2010 WL 2024500 (Fla.) on March 4, 2010.

### 1. No Justiciable Controversy Exists in Count I

 While count I purports to assert a claim for declaratory relief based on Florida Statute §§ 86.011, *et seq.*, "Florida's Declaratory Judgment Act is a procedural mechanism that confers subject matter jurisdiction on Florida's circuit and county courts; it does not confer any substantive rights" and "Florida's procedural rules are inapplicable because this is a diversity case." *Strubel v. Hartford Ins. Co. of the Midwest,* Case No. 8:09–cv–01858–T–17–TBM, 2010 WL 745616, at *2 (M.D.Fla. Feb. 26, 2010). Accordingly, count I will be construed as purporting to state a claim for relief pursuant to 28 U.S.C. § 2201. *Id.* "In all cases arising under the Declaratory Judgment Act, 28 U.S.C. § 2201 ... the threshold question is whether a justiciable controversy exists." *Atlanta Gas Light Co. v. Aetna Cas. and Sur. Co.,* 68 F.3d 409, 414 (11th Cir. 1995). "The party who invokes a federal court's authority must show, at an 'irreducible minimum,' that at the time the complaint was filed, he has suffered some actual or threatened injury resulting from the defendant's conduct, that the injury fairly can be traced to the challenged action, and that the injury is likely to be redressed by favorable court disposition." *Id.*

 QBE relies upon the Eleventh Circuit's decision in *Atlanta Gas* for the proposition that at the time of filing the complaint no actual controversy existed. While Plaintiff alleges that it notified QBE of the loss after Hurricane Wilma, QBE argues that Plaintiff does not allege that before filing this case Plaintiff expressed disagreement with QBE's adjustment of the claim or that QBE ever took the position that Plaintiff's windows and sliding glass doors were not covered under the Policies. QBE points out that the allegation that QBE "did not consider glass windows and sliding glass doors when it determined that the amount of Plaintiff's covered Hurricane Wilma loss was less than the applicable hurricane deductible," [DE–11, ¶ 26], is different than alleging that QBE stated those items were not covered under the Policies. Instead, Plaintiff simply alleges that QBE "has frequently taken the position in the past that windows and sliding glass doors are not covered" under the Policies without any allegations as to QBE's position in the instant action such that there is no active dispute between the parties. *Id.* at ¶ 28. QBE argues that without notice to and an adversarial response from QBE regarding coverage for the windows and sliding glass doors no case or controversy can exist.

The Court agrees. In *Atlanta Gas,* the Eleventh Circuit concluded that there was no case or controversy between the parties at the time the complaint was filed and, therefore, ordered dismissal of the action. 68 F.3d at 415–16. The plaintiff in *Atlanta*

*Gas* commenced the action the day after notices were mailed to its insurers, and before the insurers even received the notice, seeking a declaratory judgment to determine the extent of its insurance coverage should cleanup costs be incurred or third party property damage actions arise. *Id.* at 412. At the time of filing suit the plaintiff had incurred no cleanup costs, no environmental agency had ordered a cleanup, and no third parties had filed claims for recovery of any cleanup costs. *Id.* Although the district court had not considered the issue of whether a justiciable controversy existed, the Eleventh Circuit reiterated that in "all cases arising under the Declaratory Judgment Act, 28 U.S.C. § 2201 (1988), the threshold question is whether a justiciable controversy exists." *Id.* at 414.

In considering whether an actual case or controversy existed at the time of filing the complaint, the Eleventh Circuit emphasized that the "insurers not only had no chance to respond to [the plaintiff's] notice before the complaint was filed, they had no knowledge that notice had been given. It is therefore difficult to understand how [the plaintiff] could assert that the insurance companies had failed to defend or indemnify it for cleanup ... when the insurers had taken no position at that time with regard to their duties under [the plaintiff's] policies." *Id.* at 415. Instead, the Eleventh Circuit pointed out that to support its claims, the plaintiff simply asserted that the "defendant insurers denied coverage to similar utilities under similar circumstances in the past" and, "[i]n essence, [the plaintiff] filed its complaint as an anticipatory maneuver designed to preempt whatever actions the insurers may have taken after they received [the plaintiff's] notice." *Id.* However, the Eleventh Circuit concluded that

> Regardless of how well-founded [the plaintiff's] concerns about its insurers

may have been, speculation based on the insurance companies' dealings with other insureds does not present a concrete case or controversy. At the time the complaint was filed, [the plaintiff] could claim neither actual nor threatened injury resulting from the insurers' conduct, nor any injury traceable to the insurance companies at all ... the issues it presented were no more than conjectural questions based on the fact that other utilities had battled with insurers over [ ] cleanup costs.

*Id.*

As in *Atlanta Gas*, here Plaintiff filed the instant action on October 18, 2010, and on the same day filed a CRN. While Plaintiff does allege that it notified QBE generally of its Hurricane Wilma loss in 2005, the allegations of the Complaint also make clear that Plaintiff did not notify QBE of its disagreement with QBE's adjustment and apparent closure of the claim until after filing the instant action. Instead, based upon the allegations of the Complaint, it appears that QBE was under the impression, whether correctly or not, that Plaintiff's president had withdrawn the Hurricane Wilma claim such that no active dispute existed, and there are no allegations that Plaintiff communicated anything to the contrary to QBE prior to commencing this action. [DE–11, ¶ 17]. Despite Plaintiff's contentions in its Opposition, alleging that QBE closed the claim based upon indications of withdrawal and without any objection by Plaintiff is far different then plausibly alleging that QBE failed to act upon a claim that was submitted and actively pursued.

In fact, contrary to the assertions in Plaintiff's Opposition, Plaintiff does not even specifically allege that QBE denied coverage as to the windows and sliding glass doors. Instead Plaintiff simply al-

leges that QBE "did not consider glass windows and sliding glass doors when it determined that the amount of Plaintiff's covered Hurricane Wilma loss was less than the applicable hurricane deductible" and, therefore, "[b]ecause QBE failed to include windows and sliding glass doors in its initial evaluation of Plaintiff's loss, and because it has frequently taken the position in the past that windows and sliding glass doors are not covered under the QBE [Policies] ... Plaintiff is in doubt concerning its right to coverage for the hurricane damage to its glass windows and sliding glass doors." [DE–11, ¶¶ 26, 28]. However, the Court is not persuaded that failing to consider the windows and sliding glass doors without any objection from Plaintiff prior to suit, is somehow the plausible equivalent of a denial of coverage such that an actual case or controversy existed at the time of filing the Complaint.[2]

At best, based upon the allegations of the Complaint QBE did not express any position on coverage. While Plaintiff attempts to rely upon QBE's purported conduct in other actions as indicating its position on the windows and sliding glass doors here, as pointed in *Atlanta Gas,* regardless of QBE's purported conduct in other actions, "speculation based on [QBE's] dealings with other insureds does not present a concrete case or controversy" as to this action. 68 F.3d at 415.[3]

Accordingly, the Court will not speculate from QBE's position or conduct in other actions in order to manufacture a controversy here for Plaintiff.

Further, in the absence of any factual allegations as to QBE's position as to coverage for the windows and sliding glass doors in the instant action, it is unclear how the Court can even remedy or redress Plaintiff's purported injury. In fact, in the absence of any allegations that QBE even denied coverage, the only actual or imminent injury that seems apparent on the face of the Complaint is the possibility that Plaintiff's claims may be barred by the statute of limitations. However, there are no allegations in the Complaint showing that such an injury resulted from some conduct of QBE, but instead the expiration of the statute of limitations is simply due to the fact that Plaintiff apparently never made any attempt to communicate with QBE or pursue its claims until the fall of 2010. In other words, the mere fact that Plaintiff's claim may be ultimately barred by the statute of limitations does not create the existence of a justiciable controversy.[4] Finally, the Court notes that it is not imposing a kind of "pre-suit remonstration" as contended by Plaintiff. Simply put, in the absence of any noted objection or disagreement by the parties as to QBE's treatment of the claim or coverage as to the windows and sliding glass doors, there are no factual allegations plausibly

---

**2.** On the contrary, many possible, and plausible, reasons other than a denial of coverage could exist as to why QBE failed to consider the windows and sliding glass doors. Yet, it is not the Court's role to speculate as to hypothetical questions or scenarios that are outside the scope of the pleadings.

**3.** In its Opposition, Plaintiff repeatedly refers to facts and documents related to QBE's purported position in other actions or to conduct by QBE after the filing of the instant action. For instance, Plaintiff refers to the fact that

QBE has purportedly failed to take an express position concerning the windows and sliding glass doors even after the filing of the lawsuit. However, such facts are outside of the scope of the pleadings and will not be considered by the Court in ruling on the instant Motion.

**4.** The Court notes that the issue of statute of limitations has not been briefed by the parties and, therefore, the Court is not offering an opinion as to whether or not Plaintiff's claim would in fact be barred after dismissal.

demonstrating that a dispute existed between the parties at the time of filing the Complaint. Therefore, count I is dismissed based on the absence of a justiciable controversy between the parties.

### 2. Demand for Appraisal in Count II is Premature

■ Next, QBE argues that the Court should dismiss count II as a premature demand for appraisal since the Complaint does not allege that Plaintiff informed QBE of any disagreement concerning QBE's position before filing the lawsuit or that QBE disagreed with Plaintiff's position. QBE argues that before an insured and insurer can demand appraisal of the amount of loss certain prerequisites must be met. For instance, in *United States Fid. & Guar. Co. v. Romay,* 744 So.2d 467, 469 (Fla. 3d DCA 1999), the court held that "the insured must meet all of the policy's post-loss obligations before appraisal may be compelled." *Id.* at 468. Further, the court held that it is "axiomatic that an arbitrable issue exists between parties whose agreement provides for appraisal when there is a disagreement in the dollar amount of the loss being claimed." The court continued that the "disagreement necessary to trigger appraisal cannot be unilateral ... In other words, by the terms of the contract, it was contemplated that the parties would engage in some meaningful exchange of information sufficient for each party to arrive at a conclusion before a disagreement could exist." *Id.* at 469–70. The court further explained that this "disagreement" means

> the existence of a real difference in fact, arising out of an honest effort to agree between the insured and the insurer, is necessary to render operative a provision in a policy for arbitration of differences. Furthermore, there must be an actual and honest effort to reach an

agreement between the parties, as it is only then that the clause for arbitration becomes operative, the remedies being successive. For example, a mere arbitrary refusal to pay the amount demanded, and the offer of a less amount, without any attempt upon the part of the insurer to ascertain and estimate the amount of loss and damage, do not constitute such a disagreement as is contemplated.

*Id.* at 470 (internal citations omitted); *see also Galindo v. ARI Mut. Ins. Co.,* 203 F.3d 771, 777 (11th Cir.2000) (holding that "insureds must comply with the post-loss terms of their respective homeowner's policies, which enables the insurance companies to investigate the insureds' claims and to disagree with the loss amount before the appraisal term becomes effective.") (emphasis added).

QBE argues that the appraisal provision contained in count II contains language almost identical to that in *Romay* and also makes disagreement a prerequisite to appraisal. *Compare* [DE–11, ¶ 37 ("If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss") ], *with Romay,* 744 So.2d at 469 ("If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss ..."). However, QBE points out that Plaintiff does not allege that it expressed any disagreement with QBE's treatment of the claim and never claimed additional damages until it filed this action. Thus, QBE argues that there was nothing to prompt an "honest effort to reach an agreement" or a disagreement as required by *Romay* and *Galindo.* Without notice, QBE argues that it could not even request compliance with the policy's post-loss conditions, a prerequisite to appraisal.

The Court agrees with QBE and finds count II to be premature. Importantly, Plaintiff commenced the instant action on October 18, 2010, which contained a request for appraisal in paragraph 33 [DE–1]. Plaintiff concedes that by letter dated October 19, 2010, that was delivered to QBE on October 20, 2010, Plaintiff advised QBE that it disagreed with QBE's position that the amount of the insured loss was under the deductible and demanded that this dispute concerning the amount of loss be resolved through the appraisal process described in the Policies. [DE–11, ¶¶ 33–34]. As such, Plaintiff clearly demanded appraisal before providing notice to QBE that it disagreed with QBE's position on the amount of loss and, thus, before there was the requisite disagreement between the parties. There is no indication in the Complaint that prior to filing the instant action the parties engaged in an "actual and honest effort to reach an agreement" or that the parties engaged "in some meaningful exchange of information sufficient for each party to arrive at a conclusion" as to the amount of loss in order for a disagreement to have existed as required by *Romay* and *Galindo*.

Moreover, by filing the instant action seeking appraisal prior to any notice or meaningful exchange with QBE, QBE was not given the opportunity to even invoke the post-loss conditions in the Policies, much less assert disagreement with Plaintiff. Instead, it appears that Plaintiff is attempting to unilaterally create a "disagreement" which is specifically precluded by *Romay*. *See Romay*, 744 So.2d at 469–70 (holding that the "disagreement necessary to trigger appraisal cannot be unilateral"). As such, in an absence of a disagreement by the parties as to amount of loss or an opportunity for QBE to invoke the post-loss conditions, count II is premature. *See Galindo*, 203 F.3d at 777 ("an insurance company must be given an opportunity to investigate a supplemental claim before there can be a disagreement between the parties regarding the amount of property loss or damage to effectuate appraisal").

### 3. Stay of Count III

QBE and Plaintiff are in agreement as to a stay of count III pending the Florida Supreme Court's decision in *QBE Ins. Corp. v. Chalfonte Condo. Apartment Ass'n, Inc.*, No. SC09–441 (Fla.). Given that the Court has dismissed counts I and II and the fact that resolution of count III will be directly impacted by the Florida Supreme Court's decision, the Court finds that a stay of count III is warranted.

### III. *CONCLUSION*

Accordingly, based upon the foregoing, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant QBE Insurance Corporation's Motion to Dismiss First Amended Complaint and Motion for Entry of a Stay [DE–19] is hereby **GRANTED;**

2. Count I is hereby **DISMISSED** for lack of a justiciable controversy;

3. Count II is hereby **DISMISSED** as premature;

4. Count III is hereby **STAYED** pending resolution of the Florida Supreme Court's decision in *QBE Ins. Corp. v. Chalfonte Condo. Apartment Ass'n, Inc.*, No. SC09–441 (Fla.);

5. The parties shall file a status report updating the Court on the proceedings in *QBE Ins. Corp. v. Chalfonte Condo. Apartment Ass'n, Inc.*, No. SC09–441 (Fla.) every 45 days;

6. The Clerk is hereby **DIRECTED** to mark this case **CLOSED** for statisti-

cal purposes only and all pending motions are **DENIED** as moot. The Court nonetheless retains jurisdiction and the case shall be restored to the active docket upon Court order following motion of a party.