# Third District Court of Appeal

## State of Florida

Opinion filed May 4, 2022.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D21-636
Lower Tribunal No. 20-9153
_____

### Certain Underwriters at Lloyd's, et al.,
Appellants,

vs.

### Lago Grande 5-D Condominium Association, Inc.,
Appellee.

An Appeal from a non-final order from the Circuit Court for Miami-Dade County, Carlos Guzman, Judge.

Akerman LLP, and Gerald B. Cope, Jr. and Lorayne Perez; Phelps Dunbar LLP, and Jonathan E. Lewerenz (Tampa), for appellants.

Alvarez, Feltman, Da Silva & Costa, P.L., and Paul B. Feltman, for appellee.

Before EMAS, GORDO and BOKOR, JJ.

EMAS, J.

## INTRODUCTION

After its buildings suffered damage due to Hurricane Irma, Lago Grande 5-D Condominium Association, Inc. (the Association) filed an insurance claim with Certain Underwriters at Lloyd's (the Insurer). The Insurer acknowledged coverage for a portion of the claim and made a payment of over $137,000 to the Association.

Ten months later, the Association sued the Insurer, alleging underpayment of its claim, and then moved to compel appraisal under the terms of the insurance policy. The trial court granted the motion, and the Insurer appeals, challenging the nonfinal order compelling appraisal as premature.

The Insurer contends the Association's silence following the initial claims determination was insufficient to establish a genuine disagreement over the amount of loss, necessary to trigger appraisal. Redlhammer v. ASI Preferred Ins. Corp., 47 Fla. L. Weekly D52 at *1 (Fla. 3d DCA Dec. 29, 2021) ("In an unbroken line of cases, this Court has held that appraisal is premature when one party has not provided a meaningful exchange of information sufficient to substantiate the existence of a genuine disagreement") (citing U.S. Fid. & Guar. Co. v. Romay, 744 So. 2d 467 (Fla.

3d DCA 1999) (en banc)). We agree and therefore reverse the order compelling appraisal.

## FACTUAL BACKGROUND

Lago Grande 5-D Condominium is located in Hialeah. The community's buildings suffered damage in September 2017 due to Hurricane Irma. A year later (September 2018), the Association submitted its claim to the Insurer. The day after the Association provided notice of the loss, the Insurer assigned a third-party administrator Wheeler, Defusco & Associates (WDA) to adjust the loss; it also retained a forensic engineer and field adjuster to inspect and assess the damage to the property. Approximately a month after the claim was filed and after several inspections of the property, the field adjuster completed his 35-page estimate.

In June 2019, WDA sent a coverage determination letter to the Association: "We have investigated your claim for the insured properties with addresses referenced above. Based on the review of all information obtained during the course of the investigation and review of the applicable policy forms, we have determined there is coverage for portions of your claim and no coverage for other portions." More specifically, it determined that the exterior damage to the buildings was covered but that damage to the interior was not, as it was the result of wear and tear, poor maintenance, and wind

3

driven rain.[1] Consistent with its determination, the Insurer enclosed with its letter a check in the amount of $137,619.38. It is undisputed that the Association did not respond to the coverage determination letter or the amount of payment: the Association provided no counter-estimate of loss or damages, expressed no disagreement regarding the amount of the check, and made no request for additional payment.

Ten months later (in April 2020), the Association filed a two-count complaint for declaratory judgment and breach of contract, alleging that the Insurer underpaid on the claim. The complaint sought an unspecified amount of damages.

Between June 26 and July 10, 2020, Counsel for the parties exchanged several emails to discuss the case's progression and appraisal. In doing so, the Insurer discovered—and conveyed its discovery to the Association—that the June 2019 determination letter and, consequently the complaint, set forth an incorrect policy number and claim number. Upon discovering the mistake, the Insurer, on July 15, sent the Association a letter demanding an examination under oath, a sworn proof of loss and other pertinent documentation. The same day, the Association filed an amended

---

[1] The June 2019 letter included detailed calculations to support its determination, and enclosed the engineer's report and repair estimate.

complaint (correcting the claim/policy number) and again moved to compel appraisal, arguing it had sufficiently complied with its post-loss obligations and a dispute existed as to the scope and amount of the subject loss.

Instead of filing an Answer (as it initially suggested it would in the parties' email correspondence), the Insurer moved to dismiss the complaint and opposed appraisal as premature based on Romay, 744 So. 2d at 467, and its progeny, and because the Association failed to comply with its post-loss obligations (e.g., sworn proof of loss, supporting documentation of the claim, examination under oath).[2] In reply, the Association reiterated its argument that, once the Insurer evaluated the claim and made a payment, the Association had no other obligation.

At the hearing on the motion, the Association still did not present any estimate of the damages or cost of repair, suggesting only that this claim involved a "multi, multi, multi-million dollar loss." The trial court granted the motion to compel appraisal, and this timely appeal followed. We have jurisdiction. See Fla. R. App. 9.130(a)(3)(C)(iv).

---

[2] Days before the hearing on the motion, the Insurer sent a letter to the Association notifying it that "no coverage is to be afforded under the Policy for the alleged loss" where the Association failed to comply with its post-loss obligations, e.g., "submit a sworn proof of loss, provide requested documents to support its claim, or submit an examination under oath (all of which [the Insurer] requested by letter on July 15, 2020)."

**ANALYSIS AND DISCUSSION**

This Court has explained: "In reviewing a trial court's order denying a motion to compel appraisal, factual findings are reviewed for competent, substantial evidence, and the application of the law to the facts is reviewed de novo. Where the facts are undisputed, a de novo standard of review applies." People's Tr. Ins. Co. v. Garcia, 263 So. 3d 231, 233 (Fla. 3d DCA 2019) (citations and quotations omitted). Here, because the facts are undisputed, we review the trial court's order de novo.

The Insurer contends that the order compelling appraisal should be reversed because it is premature and in conflict with multiple decisions of this court, including Romay, 744 So. 2d at 469-70 ("[T]he disagreement [over the amount of loss] necessary to trigger appraisal cannot be unilateral. . . . [B]y the terms of the contract, it was contemplated that the parties would engage in some meaningful exchange of information sufficient for each party to arrive at a conclusion before a disagreement could exist") and, most recently, Redlhammer, 47 Fla. L. Weekly D52 at *1 ("In an unbroken line of cases, this Court has held that appraisal is premature when one party has not provided a meaningful exchange of information sufficient to substantiate the existence of a genuine disagreement.") The Association raises numerous counterarguments, including that Romay and its progeny do not

6

apply because the Insurer "was able to come to a determination of the alleged amount of the Loss through its investigation when it found coverage to the exterior damages to the Property and denied coverage for the interior damages to the Property," i.e., due to its independent, thorough investigation, the Insurer was not required to rely on representations made by the Association/insured. We disagree, and are unpersuaded by the Association's attempt to distinguish this case from Romay and its progeny.

The language of the appraisal clause in Romay provided: "If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. . . ." In nearly identical fashion, the language of the instant appraisal clause provides: "If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss." In matters of appraisal, the contract language controls. Citizens Prop. Ins. Corp. v. Zunjic, 126 So. 3d 355, 356 (Fla. 3d DCA 2013) ("What is appraised and whether a party can be compelled to appraisal depend on the contract provisions"); Citizens Prop. Ins. Cor. v. Casar, 104 So. 3d 384, 385 (Fla. 3d DCA 2013) ("Appraisals are creatures of contract.") "An appraisal demand is ripe where post-loss conditions are met, and the insurer has had a reasonable opportunity to investigate and adjust the claim and *there is a disagreement regarding the value of the property or the amount of*

7

*loss*." People's Tr. Ins. Co. v. Fernandez, 317 So. 3d 207, 210 (Fla. 3d DCA 2021) (emphasis added).

Simply put, the parties did not engage in a meaningful exchange sufficient to establish a disagreement regarding the value of the property or the amount of loss. We reaffirm that "appraisal is premature when one party has not provided a meaningful exchange of information sufficient to substantiate the existence of a genuine disagreement." Redlhammer, 47 Fla. L. Weekly D52 at *1 (citing State Farm Fla. Ins. Co. v. Hernandez, 172 So. 3d 473, 477 (Fla. 3d DCA 2015); People's Tr. Ins. Co. v. Ortega, 306 So. 3d 280, 284 (Fla. 3d DCA 2020); Citizens Prop. Ins. Corp. v. Mango Hill Condo. Ass'n 12 Inc., 54 So. 3d 578, 581 (Fla. 3d DCA 2011); Citizens Prop. Ins. Corp. v. Galeria Villas Condo. Ass'n, Inc., 48 So. 3d 188, 191 (Fla. 3d DCA 2010); Romay, 744 So. 2d at 470).

Like the insured in Redlhammer, the Association did not provide a repair estimate to the Insurer, or put the Insurer on notice that its repair estimate and scope of repairs was different from the Insurer's. Redlhammer, 47 Fla. L. Weekly D52 at *2 ("Without the benefit of ASI's competing estimate—presumably one that would be relied upon by ASI in the appraisal process—there is insufficient record evidence that Redlhammer and ASI have an informed disagreement on the amount of the loss related to the

8

repair of the main drain line.")[3]  See also Ortega, 306 So. 3d at 284 ("For there to be a disagreement, the insurance company must be put on notice that the insured's damages estimate is different from the insurer's estimate and scope of repairs.")

Indeed, it is undisputed that the Association's first and only response to the Insured's June 2019 determination letter occurred ten months later, in the form of a lawsuit.[4]  Here, no disagreement over the amount of loss ever materialized where, ten months after the Insurer made a substantial

---

[3] In Redlhammer, it was actually the insurer that refused to provide its repair estimate to the insured, and this Court rejected the insurer's argument that the Romay line of cases is only applicable to insureds. Of course, here, the Court is presented with the more common scenario, e.g., the insured has failed to provide his/her own repair estimate.

[4] Typically, the failure to engage in a meaningful exchange of information necessarily implicates compliance with post-loss obligations. See, e.g., Citizens Prop. Ins. Corp. v. Mango Hill Condo. Ass'n 12 Inc., 54 So. 3d 578, 581 (Fla. 3d DCA 2011) ("No disagreement or arbitrable issue exists unless some meaningful exchange of information sufficient for each party to arrive at a conclusion has taken place. Thus, an insured must comply with all of the policy's post-loss obligations before the appraisal clause is triggered.") (quotation omitted). While we need not further address the issue, it is noteworthy that, because of the Association's complete silence following receipt of the Insurer's determination letter (and $137,619.38 check), the Insurer would have had no way of knowing that the Association disagreed in any way with the determination letter or with the amount of the payment; such knowledge might have prompted the Insurer to request that the Association comply with certain post-loss obligations.  Indeed, after the Association filed suit ten months after receiving the June 2019 determination letter (and $137,619.38 check) the Insurer requested an EUO, a sworn proof of loss, and other pertinent post-loss documentation.

9

payment, the Association filed its lawsuit without ever providing its own estimate of loss, expressing disagreement with the Insurer's determinations, or demanding additional payment. The Association's silence could not establish the existence of a genuine disagreement over the amount of loss. Compare Safepoint Ins. Co. v. Gomez, 263 So. 3d 222, 223 (Fla. 3d DCA 2019) ("Gomez disputed the amount of the covered loss and demanded additional payment.")

**CONCLUSION**

Because the parties never engaged in an exchange of information sufficient to establish a genuine disagreement over the amount of loss, the matter was not ripe for appraisal, and the trial court erred in granting the Association's premature motion to compel appraisal.

We reverse and remand for further proceedings consistent with this opinion.