SALTER, J.
 

 Citizens Property Insurance Corporation appeals a circuit court order granting a motion by the insured, Galería Villas Condominium Association, Inc., to compel appraisal pursuant to an insurance policy. We reverse the order compelling appraisal (which has been stayed during the pen-dency of this appeal) and remand to require Galería to establish that it has (a) provided certain records requested by Citizens as it considered Galeria’s. claim and (b) provided Citizens’ adjuster or “loss consultant” reasonable rights of access to, and inspection of, the property damage detailed in Galeria’s claim.
 

 The issue presented to the trial court was whether Galeria’s demand for appraisal was premature because of Galeria’s alleged failure to comply with certain policy conditions and post-loss duties.
 
 See U.S. Fid. & Guar. Co. v. Romay,
 
 744 So.2d 467 (Fla. 3d DCA 1999). Citizens also argues that the order compelling appraisal should have contained an explicit reservation of jurisdiction over various coverage issues.
 

 Hurricane, Claim, Correspondence, and Lawsuit
 

 The pleadings, affidavits, and legal argu-
 
 *190
 
 merits
 
 [1]
 
 presented to the trial court included the following pertinent facts. Galería obtained and paid for a homeowners’ insurance policy issued by Citizens that was in force when the Galería condominium complex was damaged by Hurricane Wilma in October 2005. Galería submitted a sworn proof of loss that was investigated by a Citizens adjuster. Citizens’ estimate of damages did not exceed the deductible for the property, and therefore Citizens made no payment to Galería. Citizens did not dispute that a covered loss had occurred. This first round of administering the claim was completed by some time in 2006.
 

 Thereafter, Galería retained a public adjuster, Preferred Claim Solutions, Inc.,
 
 [2]
 
 and Preferred prepared detailed construction cost estimates broken out by building, line item, quantities, and unit costs. Contractor’s overhead and profit and sales tax were also itemized for each of the 16 buildings, and a separate total for all of the repairs was included. The total estimate for repairs for the October 24, 2005, windstorm loss was $1,886,054.86. These detailed cost estimates, all dated April 8, 2009, were provided to Citizens with an initial demand for appraisal in May 2009.
 

 In a letter of May 28, 2009, - Citizens acknowledged receipt of the Preferred repair estimates, reserved various rights, and requested a final, signed and sworn proof of loss as well as copies of 13 categories of documents. Galería provided the signed and sworn proof of loss in July 2009. On August 10, 2009, Citizens acknowledged receipt of the proof of loss but claimed there were inconsistencies with the earlier estimates prepared by Preferred. Citizens also renewed its request for the 13 categories of documents identified in its May 28 letter and complained that Citizens’ loss consultant “has not been provided an opportunity to inspect this property since the initial inspection in 2005.”
 

 Four days later, Galería filed its lawsuit against Citizens alleging breach of the insurance policy, including Citizens’ failure to comply with the appraisal clause in the policy. A month later, Galería filed a motion to compel appraisal and Citizens moved to strike that motion. Galería filed affidavits and copies of many of the documents that had been requested by Citizens. One of the affidavits acknowledged, however, that Galería had denied Citizens’ request to allow its “loss consultant” to reinspect the damaged buildings:
 

 On or about August 10, 2009, the insurance company requested for a Loss Consultant to re-inspect the Properties. We advised Citizens that we had no objection to the re-inspection; however, we would re-inspect the Properties with an adjuster from Citizens not a Loss Consultant to determine coverage.
 

 In addition, in discovery responses in the lawsuit and during the hearing on the motions in February 2010, Galería acknowledged that it had not provided certain categories of condominium association documents
 
 [3]
 
 to Citizens as requested nine months before the hearing. Galería ar
 
 *191
 
 gued, and the trial court apparently agreed, that these requests were over-broad, ambiguous, and not relevant to the adjustment of the insurance claim.
 

 Analysis
 

 While Citizens’ requests may seem broad, the types of documents that were not provided by Galería may (and typically do) contain information bearing directly on the claim and the respective obligations of the insurer, the insured, and the homeowners living within the insured units. The declaration and bylaws normally define a condominium association’s insurance and maintenance obligations vis-á-vis a unit occupant. The association board and membership meeting minutes may disclose, for example, (1) decisions to undertake capital improvements affecting the damaged property, (2) expenses incurred in maintaining or repairing a roof or other common elements, and (3) the nature and dates of prior damage or repairs. Property management contracts are important for the same reason. All such records may identify individuals with pertinent knowledge so that they can be contacted during the investigation of the claim. And these records were and are required to be kept by Galería as a matter of Florida law.
 
 See
 
 § 718.111(12), Fla. Stat. (2009).
 

 Nor may an insured refuse access to the damaged properties to an insurer’s “loss consultant,” insisting instead that the insurer send in an “adjuster.” The post-loss duty in section E.8.a.(6) of the policy obligated Galería to, “[a]s often as may be reasonably required, permit [Citizens] to inspect the property proving the loss or damage.” Citizens acts through employees and agents, and an insured ordinarily recognizes that the sooner the insurer’s representative (irrespective of title) is allowed to inspect the areas of claimed damage, the sooner the claim will be adjusted, appraised, or otherwise brought to resolution. Finally, and as we observed in
 
 Ro-may,
 
 “[t]hese obligations are not unduly burdensome or arbitrary.”
 
 [4]
 

 Until these conditions are met and the insurer has a reasonable opportunity to investigate and adjust the claim, there is no “disagreement” (for purposes of the appraisal provision in the policy) regarding the value of the property or the amount of loss. Only when there is a “real difference in fact, arising out of an actual and honest effort to reach an agreement between the insured and the insurer,”
 
 [5]
 
 is an appraisal warranted. We therefore reverse the order compelling appraisal and remand for what we anticipate will be
 
 complete
 
 and
 
 immediate
 
 cooperation by Gale-ría in affording access to the property and the remaining records, and a
 
 prompt
 
 response to the claim by Citizens after its
 
 prompt
 
 investigation.
 
 [6]
 

 Citizens also argued that the appraisal order was in error because it failed to reserve jurisdiction on any coverage issues. Although this issue is moot because of our determination that the order compelling appraisal was premature, this court has previously addressed Citizens’ argument. Once the trial court determines that a demand for appraisal is ripe, the court has the discretion to control the or
 
 *192
 
 der in which an appraisal and coverage determinations proceed.
 
 Sunshine State Ins. Co. v. Rawlins,
 
 34 So.3d 753, 754-55 (Fla. 3d DCA 2010).
 
 [7]
 
 That holding does not require an interlocutory order for appraisal to explicitly reserve jurisdiction to determine legal questions regarding the policy terms after the appraisal has been completed.
 

 The order compelling appraisal is reversed and remanded for further proceedings.
 

 [1]
 

 . Neither Citizens nor Galería offered the testimony of any witness during the hearing on the cross-motions regarding appraisal, nor did either party request the court to set an evidentiary hearing on the motions.
 

 [2]
 

 . Galería retained a different public adjuster in 2007, but Preferred replaced that firm in 2008.
 

 [3]
 

 ."Declarations of Condominium; Condominium Bylaws, and any and all minutes of Association Board meetings for the last seven (7) years; Contracts for property management services between Galería Villas Condo Association and any property management company for the last seven (7) years.”
 

 [4]
 

 .
 
 Romay,
 
 744 So.2d at 471.
 

 [5]
 

 .
 
 Id.
 
 at 470 (quoting 14 Couch on Insurance 2d § 50:56 (1982)). Although the quoted language refers to the prerequisites for arbitration, in
 
 Romay
 
 this Court found that description equally applicable to the standard appraisal clause.
 

 [6]
 

 .The emphasis on
 
 prompt
 
 action after remand, as opposed to petulance or foot-dragging, is directed to both parties. Insurance claims are not like fine wines; they do not become better with time.
 

 [7]
 

 .
 
 Rawlins
 
 reviewed the procedural question as-addressed in cases involving insurance policy arbitration provisions, ultimately determining that the same rule of discretion should apply to the order in which appraisal and coverage issues proceed.