# Third District Court of Appeal

## State of Florida

Opinion filed June 17, 2015.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D13-2263
Lower Tribunal No. 11-34367
_____


**State Farm Florida Insurance Company,**
Appellant,

vs.

**Alfredo Hernandez,**
Appellee.


An appeal from a non-final order from the Circuit Court for Miami-Dade County, Jerald Bagley, Judge.

Russo Appellate Firm, P.A., and Elizabeth K. Russo; Walton Lantaff Schroeder & Carson LLP, and Michael H. Galex, for appellant.

Alvarez, Carbonell, Feltman, & DaSilva, PL, and Paul B. Feltman, for appellee.


Before SHEPHERD, C.J., and ROTHENBERG and EMAS, JJ.

ROTHENBERG, J.

State Farm Florida Insurance Company ("State Farm") appeals the trial court's non-final order compelling appraisal of Alfredo Hernandez's ("Hernandez") supplemental Hurricane Wilma claim. Because Hernandez failed to comply with his contractual post-loss obligations, we conclude that the trial court erred by compelling appraisal before determining the disputed issue of coverage under the policy. We therefore reverse.

## FACTUAL BACKGROUND

This appeal stems from a supplemental Hurricane Wilma insurance claim that was filed after the homeowner obtained a public insurance adjuster. This particular supplemental claim was filed five years after the insurer paid the initial claim of loss filed by Hernandez. The record reflects that Hurricane Wilma struck Miami on October 24, 2005, and that within one month of Hernandez's claimed loss, State Farm paid Hernandez $36,858.80 (after subtracting the $5260 deductible) to cover the repairs, which included $27,800 for a full roof replacement. Hernandez did not complete the roof repair until nearly a year later because he was unable to acquire the proper roof tiling. Hernandez claims he noticed additional damage, including water stains, damage to the wiring and walls, and leaking in the roof sometime after State Farm's initial payment. Allegedly based on these additional damages, Hernandez renovated his entire home by replacing the floor tiles throughout the house; replacing the sinks, tubs, toilets,

2

faucets, tiles, and lighting fixtures in the three bathrooms; replacing all of the cabinets and appliances in the kitchen; replacing some windows and window sills; and repainting various areas in and around the home. Although these renovations were completed in early 2007, Hernandez did not contact State Farm before, during, or after these repairs were made to allow inspection by State Farm. Hernandez only sparsely documented his costs with checks and receipts for only a few of the claimed repairs, and he claims that he paid cash for a substantial portion of the renovations.

In 2010, after seeing a television advertisement, Hernandez contacted a public insurance adjuster company, Expert Claims Adjusters ("ECA"), to appraise the damages. In November 2010, Hernandez contacted State Farm claiming he was entitled to supplemental damages under the terms of the policy. In response, State Farm requested a sworn proof of loss and any supporting documentation. Hernandez submitted his initial sworn proof of loss claiming he was entitled to an additional $201,038.84 in damages. Hernandez's sworn proof of loss included the public adjuster's estimate to replace Hernandez's roof in the amount of $53,000 even though State Farm had already paid Hernandez $27,865 within one month of the storm to replace his roof and Hernandez had fully replaced his roof by 2006.

Recognizing that his first sworn proof of loss for the supplemental claim had falsely included a claim for $53,000 to replace the roof, which had already been

3

replaced in 2006 for $27,865—not the $53,000 sworn to by Hernandez—Hernandez filed a second sworn proof of loss for his supplemental claim wherein he reduced his supplemental claim from $201,038.84 to $168,346.12. This second sworn proof of loss, however, still included a claim to replace the roof for $27,800, which Hernandez admits State Farm had already paid in 2006.

In May 2011, Hernandez's supplemental claim changed again. When Hernandez testified at his Examination Under Oath ("EUO"), he stated that, in addition to the roof replacement and repairs for which he had already been compensated based on his original 2005 claim, he spent approximately $65,000 to make additional repairs to his home rather than the $201,038.84 he claimed in his first sworn proof of loss or the $168,346.12 he claimed in his second sworn proof of loss.

In October 2011, State Farm paid Hernandez an additional $1300 based on the additional costs Hernandez claimed he had incurred to replace his roof—damages to which State Farm had already admitted coverage and timely paid. State Farm did not pay the remainder of Hernandez's supplemental claim. Thereafter, Hernandez filed suit for breach of contract and then moved to compel appraisal based on an appraisal clause in his insurance policy, which states, in relevant part:

4

"**Appraisal.** If you and we fail to agree on the amount of loss, either one can demand that the amount of the loss be set by appraisal."

State Farm filed a written response objecting to appraisal based on Hernandez's failure to comply with his post-loss obligations, including his failure to give State Farm timely notice of his supplemental claim, failure to cooperate, failure to provide documents substantiating his claimed losses, and Hernandez's concealment and/or fraud in the presentation of his claim. After conducting an evidentiary hearing, the trial court found that Hernandez had "sufficiently" complied with his post-loss obligations and granted Hernandez's motion to compel appraisal. State Farm timely appealed.

## ANALYSIS

The law in Florida is clear that issues of coverage and liability under an insurance policy are for the court or jury, respectively, whereas a dispute regarding the amount of loss found to be covered under the policy is subject to appraisal if so provided in the insurance policy. Citizens Prop. Ins. Corp. v. Mango Hill # 6 Condo. Ass'n, 117 So. 3d 1226, 1227 n.1 (Fla. 2013). An insured's compliance with the post-loss obligations mandated in the policy raises a question of liability, not the value or amount of the loss. See State Farm Fire & Cas. Co. v. Licea, 685 So. 2d 1285, 1288 (Fla. 1996) (holding that even when an insurer has admitted partial coverage of the claim and submits to appraisal, it can still contest the claim

5

if "there has been a violation of the usual policy conditions such as fraud, lack of notice, and failure to cooperate").

Although this Court has previously held that a trial court may exercise its discretion when determining whether to allow appraisal of an insurance claim before determining whether the policy covers that claim, see Sunshine State Ins. Co. v. Rawlins, 34 So. 3d 753, 754 (Fla. 3d DCA 2010) (citing Paradise Plaza Condo. Assoc. v. Reinsurance Corp. of New York, 685 So. 2d 937 (Fla. 3d DCA 1996)),[1] that discretion is not absolute. As this Court stated in Citizens Property Insurance Corp. v. Mango Hill Condominium Ass'n 12 Inc., 54 So. 3d 578, 581 (Fla. 3d DCA 2011) (hereinafter "Mango Hill 12"), where the insured has not complied with his post-loss obligations under the policy, a trial court is not empowered to compel appraisal:

> The discretion to determine the order in which coverage and loss issues are considered does not, however, override a preliminary determination as to whether an arbitrable issue exists. Before arbitration (or appraisal) under an insurance policy such as the one at issue here may be compelled, a disagreement, or "arbitrable issue," must be demonstrated to exist. U.S. Fid. & Guar. Co. v. Romay, 744 So. 2d 467, 469 (Fla. 3d DCA 1999). No disagreement or arbitrable issue exists unless "some meaningful exchange of information sufficient for each party to arrive at a conclusion" has taken place. Id.

_____

[1] We note, however, that the Fourth District Court of Appeal has specifically held that the trial court must resolve coverage issues before sending the parties to appraisal to determine damages. Citizens Prop. Ins. Corp. v. Michigan Condo. Ass'n, 46 So. 3d 177, 178 (Fla. 4th DCA 2010) (certifying conflict with this Court's decision in Rawlins on this precise issue); Sunshine State Ins. Co. v. Corridori, 28 So. 3d 129, 130 (Fla. 4th DCA 2010).

6

at 470. **Thus, an "insured must comply with all of the policy's post-loss obligations before the appraisal clause is triggered."** Id. at 471; see First Home Ins. Co. v. Fleurimond, 36 So. 3d 172, 174 (Fla. 3d DCA 2010).

(emphasis added).

The law in this district is clear and has been for nearly twenty years: the party seeking appraisal **must comply with all post-loss obligations** before the right to appraisal can be invoked under the contract. See Romay, 744 So. 2d at 471 (holding in 1999 that, "The insured must comply with all of the policy's post-loss obligations before the appraisal clause is triggered."); Mango Hill 12, 54 So. 3d at 581 (reaffirming the same in 2011). Thus, a trial court reversibly errs by compelling appraisal before an insured has complied with his post-loss obligations.

Although the trial court recognized that Hernandez had not fully complied with his post-loss obligations under the policy, it ordered the parties to appraisal after finding that Hernandez had "sufficiently complied" with his policy's post-loss obligations. The trial court's ruling was based on its reading of this Court's opinion in Mango Hill 12, and specifically the following language in Mango Hill 12: "Because [the trial court compelled appraisal without holding an evidentiary hearing to determine whether the insured had complied with his post-loss obligations], we reverse the order compelling appraisal and remand for an evidentiary hearing on whether [the insured] **sufficiently complied** with the

policy's post-loss requirements."   54 So. 3d at 582 (emphasis added) (citing

Corridori, 28 So. 3d at 131).

The trial court's ruling was, however, issued prior to this Court's issuance of

its opinion in State Farm Florida Insurance Co. v. Cardelles, 159 So. 3d 239 (Fla.

3d DCA 2015), and thus, the trial court did not have the benefit of the Cardelles

opinion, wherein we expressly rejected this interpretation of Mango Hill 12.   In

Cardelles, we held:

> The trial court's order seems to suggest that our Mango Hill 12
> decision substantially changed the requisite standard to obtain
> appraisal to require something less than full compliance with all post-
> loss obligations, as had been mandated by our numerous past
> holdings.  However, a full reading of Mango Hill 12, along with a
> litany of our other cases on this subject, confirms that "sufficient
> compliance" still requires that all post-loss obligations be satisfied
> before the trial court can properly exercise its discretion to compel
> appraisal.  Id. (holding that "an 'insured must comply with all of the
> policy's post-loss obligations before the appraisal clause is
> triggered.'" (quoting Romay, 744 So. 2d at 471)); see also Citizens
> Prop. Ins. Corp. v. Gutierrez, 59 So. 3d 177, 179 (Fla. 3d DCA 2011)
> (citing Romay for that same proposition after Mango Hill 12 was
> issued).

Cardelles, 159 So. 3d at 241.

Requiring that all post-loss obligations be satisfied before the trial court may

exercise its discretion to compel appraisal is not only mandated by the case law, it

also makes perfect sense.   The goal of alternative dispute resolution is only

furthered  when the parties have each had a real opportunity to inspect the damages

and the receipts to come to a reasonable estimate of the amount of the covered loss.

8

Indeed, that is the entire reason post-loss obligations are included in the policy. As we succinctly stated in Citizens Property Insurance Corp. v. Galeria Villas Condominium Ass'n:

> Until these [post-loss obligation] conditions are met and the insurer has a reasonable opportunity to investigate and adjust the claim, there is no "disagreement" (for purposes of the appraisal provision in the policy) regarding the value of the property or the amount of loss. Only when there is a "real difference in fact, arising out of an actual and honest effort to reach an agreement between the insured and the insurer," is an appraisal warranted.

48 So. 3d 188, 191 (Fla. 3d DCA 2010) (footnote omitted).

The record reflects that Hernandez has not complied with several of his post-loss obligations under the insurance policy. Hernandez did not provide immediate notice or keep records of the claimed supplemental loss, did not notify State Farm within 60 days after his repairs were completed, did not provide sufficient documentation of the damages and repairs, and he has submitted three different sworn statements regarding his supplemental claim.[2] These breaches are both substantial and material, especially since Hernandez completed the repairs to

---

[2] We note that this is not the first time this Court has been called upon to review a palpably flawed sworn proof of loss. Insureds should carefully review these estimates to ensure accuracy before acknowledging them in a sworn proof of loss. At a minimum, the insured loses credibility, and submitting a false sworn proof of loss may result in a finding of fraud. In this case, Hernandez initially swore under oath that he had sustained over $200,000 in damages only to state in a sworn deposition months later that he had fully repaired the damages for less than $70,000. Although the issue is not directly before us in this case, in a proper case, these deviations alone may lead to a denial of recovery.

his home nearly five years before submitting his supplemental claim, and the breaches entirely foreclose State Farm's ability to investigate and adjust Hernandez's claim.

The prejudice to State Farm in the instant case demonstrates the prejudice that necessarily flows to the insurer when the insured fails to comply with his post-loss obligations. State Farm has been denied a meaningful opportunity to investigate Hernandez's supplemental claim to determine if the claimed losses were, in fact, based on damages as opposed to the owner's mere desire to renovate his home. Further, if the claimed losses were based on actual damages to the house, State Farm did not have the opportunity to investigate whether the damages were as a result of Hurricane Wilma, negligence by Hernandez, negligence by the roofer who installed the new roof, or due to some other cause.

Because Hernandez has not complied with his post-loss obligations, State Farm cannot conduct a meaningful investigation in order to adjust the claim. Accordingly, we reverse the order under review and remand this case back to the trial court for proceedings consistent with this opinion.

Reversed and remanded.