**NOT FOR PUBLICATION**

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 24-10889

_____

BAYTREE, CONDOMINIUM, SECTION EIGHT, INC.,

_Plaintiff-Appellant,_

_versus_

CLEAR BLUE SPECIALTY INSURANCE COMPANY,

_Defendant-Appellee._

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:22-cv-02041-ACC-EJK

_____

Before WILLIAM PRYOR, Chief Judge, and LUCK and BRASHER, Circuit Judges.

LUCK, Circuit Judge:

A powerful storm hit Winter Springs, Florida, in April 2021. Nine months later, Baytree, Condominium, Section Eight, Inc. filed a claim for roof damage from the storm with its insurance

company, Clear Blue Specialty.  When the claims process stalled, Baytree sued, seeking a declaratory judgment that it was entitled to an appraisal, and damages for breach of the insurance policy. The lawsuit proceeded in two phases.  First, Baytree moved for summary judgment on its appraisal claim, which the district court denied.  Then, Clear Blue moved for summary judgment on both the appraisal and breach-of-insurance-policy claims.  The district court granted that motion, and, while doing so, excluded an untimely supplemental opinion from one of Baytree's experts.

After careful review, and with the benefit of oral argument, we affirm the denial of Baytree's summary-judgment motion on the appraisal claim in the first phase of the case.  And we affirm the exclusion of the supplemental opinion by Baytree's expert.  But we reverse the summary judgment for Clear Blue during the second phase because there's a jury issue about whether Baytree's late notice of the roof damage prejudiced Clear Blue in investigating the loss.

## FACTUAL BACKGROUND

### *The Insurance Policy*

Baytree is made up of four buildings numbered 80, 90, 100, and 110.  In 2021, it purchased a year-long insurance policy for the four buildings beginning on April 1.

The policy included three relevant provisions:  the coverage provision; the appraisal provision; and the notice provision.  First, the coverage provision required Clear Blue to "pay for direct

physical loss of or damage to [c]overed [p]roperty at the premises . . . caused by or resulting from any [c]overed [c]ause of [l]oss." The "[c]overed [p]roperty" included Baytree's four buildings. And windstorms and hail were covered causes of loss under the policy.

Second, the appraisal provision offered the parties a process for resolving "disagree[ments] on the value of the property or the amount of loss":

> [E]ither [party] may make written demand for an ap-praisal of the loss. In this event, each party will select a competent and impartial appraiser. The two ap-praisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:
>
> a. Pay its chosen appraiser; and
>
> b. Bear the other expenses of the appraisal and um-pire equally.
>
> If there is an appraisal, [Clear Blue] will still retain [its] right to deny the claim.

And third, under the notice provision, if Baytree had a cov-ered loss, it had to give Clear Blue "prompt notice of [any] loss or damage[,] [i]nclud[ing] a description of the property involved." Baytree was not allowed to "bring a legal action against [Clear

Blue] . . . unless . . . [t]here ha[d] been full compliance with all of the terms of [the policy]," including the notice provision.

*The Storm and Other Damage*

On April 10 and 11, 2021, a storm damaged the roofs of Baytree's buildings.  Within two days, Baytree's property manager visited the property.  She saw shingles on the ground that weren't concentrated around one building.  And she saw "small branches all over the place."

There were other problems with the Baytree buildings in 2021.  A section of building 90's roof was "peeled back" by "another storm" in early August.  Baytree received a complaint from a building 90 resident about a roof leak after the August storm.  Residents in buildings 80 and 100 also reported roof leaks to the property manager.  The "bulk of" these reports were made during the "rainy season," between May and September.

In response to the complaints, Baytree sent two contractors to inspect the roofs and ordered semi-permanent repairs to avoid further interior damage.  The first contractor replaced the peeled-back row of shingles on building 90 and covered them with a tarp two days after the August storm.  The second contractor, in September, removed a single, undamaged shingle from building 90 and replaced it with a temporary one so it could be identified for permanent repairs.  The second contractor returned twice in October to inspect the property and observed wind and "potential" hail damage to the roofs.

### The Claims Process

Baytree did not notify Clear Blue about the April 2021 storm until nine months later, in January 2022. When it finally gave notice, Baytree said that its roofs were damaged by wind and hail from the April storm. Baytree's expert determined that the roof damage was covered by the policy and the roofs needed to be replaced at an estimated cost of $1,191,799.52.

Clear Blue responded with a reservation of rights letter. In the letter, Clear Blue agreed it would investigate the claim, but it would do so only "under a full and complete [r]eservation of [r]ights for late reporting . . . extend[ing] to all facts, known and unknown, as they may pertain to this claim." Clear Blue continued:

> Any action taken by [Clear Blue] in the investigation, defense, or settlement of this claim shall not constitute or be construed as a waiver or an estoppel of any rights or defenses [Clear Blue] ha[s] under the subject policy of insurance. [Clear Blue] further reserve[s] the right to deny coverage and withdraw from any further participation in this matter altogether, should facts be developed, that determine the above-captioned policy does not cover this loss.
>
> . . . .
>
> Neither this communication and undertaking, nor any future communication or undertaking, should be deemed or construed as a waiver of any of the rights

of [Clear Blue], including those rights provided in the contract of insurance.

As part of its investigation, Clear Blue sent a field adjuster and an engineer to inspect the four buildings and determine the cause and scope of the damage and repairs. Following the inspections, Clear Blue agreed there was a covered loss to the property from the April 2021 storm consisting of repairable wind damage to ten shingles on buildings 90, 100, and 110. But there was no damage to building 80. The repairs, Clear Blue estimated, would cost $2,022.48. Since that amount was below the policy deductible, Clear Blue concluded it owed nothing. And it once again reserved its rights to assert any coverage defenses under the policy.

For its part, Baytree disputed Clear Blue's damage calculation and demanded appraisal. Baytree invoked "its right to appraisal under the policy" based on "the disagreement as to the amount of the loss between the parties."

Clear Blue agreed to participate in appraising "those areas of the subject claim in which coverage was extended," referring to an "enclosed estimate for a line-item list of those areas in which coverage was extended." But, Clear Blue explained, it declined to appraise "any portion of the subject claim that [went] beyond those areas specifically listed in the enclosed estimate," including for "claims, or portions of claims, wherein coverage [wa]s in dispute."

Yet the appraisal never happened. After a series of follow-up emails, Baytree sent "final correspondence" to Clear Blue advising that the insurance company's "refusal to state what portions of the

claim it [wa]s agreeing to appraise prevent[ed] the parties from completing appraisal and [wa]s a breach of the policy." Baytree warned that to avoid litigation Clear Blue must "provide written confirmation clearly outlining which buildings it [wa]s agreeing to an appraisal of" within seven days.

## PROCEDURAL HISTORY

After seven days, Baytree turned to the Florida state courts. It brought two claims. First, Baytree sought a "declaratory judgment that [its] entire claim be appraised and not solely the portion [Clear Blue] selected." It alleged that Clear Blue's "attempt to limit what c[ould] be appraised [wa]s in direct conflict" with Florida law.

Second, Baytree sought damages for breach of the insurance policy. Baytree alleged that Clear Blue "failed to fully indemnify [Baytree] from its loss as required by the [policy]," despite having "notice of the scope of loss and cost of necessary repairs required to return the property to its pre-loss condition."

Clear Blue removed Baytree's lawsuit to federal court. Once there, the district court issued a scheduling order requiring Baytree to submit its expert opinions by September 1, 2023. All discovery was due by November 15, 2023.

Before the discovery deadline, Baytree disclosed the report of Rocco Calaci, whom Baytree hired as an expert on "meteorological conditions at the [] property in relation to the loss." Calaci's opinion was that the April 2021 storm "affected" the Baytree

buildings.  In support, Calaci collected radar and ground reports to assess the wind speed and hail size in April 2021 near Baytree.

*Phase One:  Baytree's Motion for Summary Judgment on Its Appraisal Claim*

The parties litigated Baytree's claims in two phases.  In the first phase, Baytree sought summary judgment on its appraisal claim.  Baytree argued that appraisal should be ordered because Clear Blue conceded that "some" of the damage to the roofs was covered by the policy and the only dispute was the amount of loss.  Clear Blue's "refus[al] to appraise any of the damages it determined were excluded from coverage and not causally related to the storm based on its own repair estimate . . . constitute[d] a breach of the appraisal provision of the policy."

Clear Blue responded that it "ha[d] not waived defenses available to it under the [] [p]olicy, and ha[d] not waived post-loss [c]onditions of the [p]olicy that [we]re precedent to coverage and to legal action."  This included the notice provision, which required Baytree to provide Clear Blue with "prompt notice of its loss."  The notice provision, Clear Blue explained, was "set forth in the [] [i]nsurance [p]olicy" and was part of its reservation of rights letters.  Because Baytree's late notice about the roof damage failed to comply with its post-loss obligations under the policy, Clear Blue concluded, there was still an open question about whether the loss was covered, which meant that appraisal was premature.

The district court denied Baytree's summary-judgment motion "[b]ecause Clear Blue allege[d] Baytree did not comply [with

the notice provision], and Baytree ha[d] not refuted the point at th[at] juncture," so "coverage remain[ed] an issue and appraisal [wa]s not warranted at th[at] time." The district court rejected Baytree's argument that Clear Blue waived its right to invoke the notice provision by adjusting the claim and agreeing to an appraisal.

*Phase Two:  Clear Blue's Motion to Exclude Calaci's Supplemental Opinion*

In the second phase, Clear Blue moved for summary judgment on Baytree's appraisal and breach-of-insurance-policy claims. Attached to Baytree's response—filed on December 22, 2023, more than a month after the discovery deadline—was a supplemental opinion by Calaci. Calaci's supplemental opinion was that "the April 11, 2021[,] [] storm was the only [] storm to impact the Baytree [p]roperty between April 11, 2021[,] and March 1, 2022[,] and there were no other intervening [] storms during that time."

Clear Blue moved to exclude the supplemental opinion because it "disclosed information not previously provided," and the late disclosure did not allow an "opportunity to depose [Calaci] concerning the information." Baytree, in response, asserted that the no-intervening-storms opinion was not new, but was instead a supplement that didn't "exceed the scope" of the initial report. While it conceded that "Calaci's statement that there were no intervening [] storms at Baytree's property was not expressly stated in his [initial] report," Baytree argued that the supplemental opinion was "wholly within the scope of the subject matter identified . . . and there [wa]s also no indication Calaci relied on any new

or supplemental evidence outside what was contained in his report that was provided to [Clear Blue] months before the close of expert discovery."

The district court disagreed. The supplemental opinion about "additional weather conditions on other days" during "a much extended 9-month period," the court explained, was outside the scope of the initial report, which focused only on the weather in April 2021. And, the district court continued, the "fact that Clear Blue had no opportunity to cross-examine [] Calaci as to this opinion establishe[d] prejudice that [couldn't] be cured at th[at] time." Because Baytree did not substantially justify its belated disclosure, the district court excluded Calaci's supplemental opinion.

*Phase Two: Clear Blue's Motion for Summary Judgment on the Appraisal and Breach-of-Insurance-Policy Claims*

With Calaci's supplemental opinion excluded, the district court turned to Clear Blue's summary-judgment motion on Baytree's appraisal and breach-of-insurance-policy claims. In its motion, Clear Blue argued that Baytree violated the notice provision by failing to provide prompt notice of the roof damage after the April 2021 storm. The failure to provide prompt notice created a presumption that Clear Blue was prejudiced in adjusting Baytree's claim. And Baytree did not present any summary-judgment evidence to overcome the presumption. Under the policy, that meant Baytree was not permitted to bring its lawsuit.

Baytree, in its answer, agreed that it did not provide prompt notice of the roof damage after the April 2021 storm. And it agreed

that the failure to provide prompt notice created a presumption that Clear Blue was prejudiced in adjusting the loss. But, Baytree argued, it offered evidence to rebut the presumption. Specifically, Baytree pointed to Clear Blue's engineer and adjuster who testified that nothing prevented them from determining the cause and extent of the loss and cost of repairs despite the delay in notice.

Unconvinced, the district court granted summary judgment for Clear Blue. The district court accepted the parties' agreement that Baytree failed to give prompt notice of its loss to Clear Blue after the April 2021 storm. This failure, the district court explained, created a presumption that Clear Blue was prejudiced in adjusting the loss. And Baytree, according to the district court, did not rebut the presumption. Because Clear Blue was prejudiced by Baytree's late notice, Baytree was barred under the policy from bringing its lawsuit against Clear Blue. Thus, summary judgment was due for Clear Blue.

Baytree appeals the denial of its summary-judgment motion on the appraisal claim in the first phase. And it appeals the exclusion of Calaci's supplemental opinion and the summary judgment for Clear Blue on the appraisal and breach-of-insurance-policy claims in the second phase.

## STANDARD OF REVIEW

We review de novo the district court's grant and denial of summary judgment, viewing the facts and reasonable inferences in the light most favorable to the non-moving party. *Jurich v. Compass Marine, Inc.*, 764 F.3d 1302, 1304 (11th Cir. 2014) (grant); *Bussinger*

*v. City of New Smyrna Beach*, 50 F.3d 922, 925 (11th Cir. 1995) (denial). We review the exclusion of an untimely expert opinion for an abuse of discretion. *Guevara v. NCL (Bahamas) Ltd.*, 920 F.3d 710, 717 (11th Cir. 2019).

## DISCUSSION

We divide our discussion into three parts. First, we review the district court's denial of Baytree's summary-judgment motion on the appraisal claim during the first phase of the litigation. Second, we consider the district court's exclusion of Calaci's supplemental opinion that there were no weather events between the April 2021 storm and March 2022. And third, we examine the district court's summary judgment for Clear Blue on the appraisal and breach-of-insurance-policy claims in the second phase.

### *The Denial of Baytree's Summary-Judgment Motion on Its Appraisal Claim*

Under Florida law, where, as here, an insurance policy has an appraisal provision, an appraisal is available when the parties agree that a loss is covered but disagree on the amount of the loss. *See Johnson v. Nationwide Mut. Ins. Co.*, 828 So. 2d 1021, 1022 (Fla. 2002). Appraisal is not available, though, where the parties disagree about whether a loss is covered under the policy, including whether the insured complied with the notice provision. *See State Farm Fla. Ins. Co. v. Hernandez*, 172 So. 3d 473, 476–78 (Fla. Dist. Ct. App. 2015) (considering the policy's "immediate notice" provision to be a "post-loss obligation[]" for which "compliance . . . raise[d] a

question of liability, not [a question as to] the value or amount of the loss," thus precluding appraisal).

Here, the parties agree that Baytree did not comply with the notice provision.  And the parties agree that the failure to comply is a coverage dispute that normally would preclude an appraisal. *See id.* at 474, 476–78 (requiring that the insured comply with the "immediate notice" provision before the trial court could compel appraisal).  But, Baytree argues, the failure to comply with the notice provision did not preclude an appraisal in this case because Clear Blue waived its notice defense.

Baytree is right that the notice requirement can be waived by an insurance company's conduct.  *See Laird v. Chi. Ins. Co.*, 227 So. 2d 230, 230 (Fla. Dist. Ct. App. 1969).  To waive the notice requirement, the insurance company must "clearly demonstrate an intent to otherwise relinquish its contractual right to prompt notice of the loss." *Sec. First Ins. Co. v. Visca*, 387 So. 3d 313, 317 (Fla. Dist. Ct. App. 2024) (citing *Am. Somax Ventures v. Touma*, 547 So. 2d 1266, 1268 (Fla. Dist. Ct. App. 1989)).  For example, "[w]here an insurer unconditionally denies liability, it waives all policy provisions governing notification of loss." *Nu-Air Mfg. Co. v. Frank B. Hall & Co. of N.Y.*, 822 F.2d 987, 993 (11th Cir. 1987) (first citing *Wegener v. Int'l Bankers Ins. Co.,* 494 So. 2d 259 (Fla. Dist. Ct. App. 1986); then citing *Hartford Accident & Indem. Co. v. Phelps,* 294 So. 2d 362, 365 (Fla. Dist. Ct. App. 1974); and then citing *Am. Ins. Co. of Newark v. Burson,* 213 F.2d 487, 490 (5th Cir. 1954)).

14                    Opinion of the Court                    24-10889

But Baytree is wrong that Clear Blue clearly demonstrated an intent to relinquish its contractual right to prompt notice of the roof damage.  *See id.*; *Visca*, 387 So. 3d at 317.  To be sure, Clear Blue adjusted the insurance claim and determined there was some coverage.  And it agreed to appraise some of Baytree's loss.  But within days of Baytree reporting the storm damage, Clear Blue reserved its right to deny Baytree's claim for "late reporting."  And in its coverage determination letter, after investigating the claim, Clear Blue repeated that it was not waiving its "rights and defenses."  Clear Blue's coverage and appraisal decisions, in other words, were not unconditional.

Citing *Axis Surplus Insurance Co. v. Caribbean Beach Club Ass'n*, 164 So. 3d 684 (Fla. Dist. Ct. App. 2014), Baytree contends that the reservation of rights letters did not save Clear Blue from waiving the notice requirement.  But *Axis Surplus* doesn't help Baytree.  There, the insurance company adjusted the claim for more than two years before mentioning a requirement in the insurance policy regarding repairs.  *Id.* at 689.  Here, in contrast, Clear Blue reserved its rights to invoke the notice provision almost immediately after the loss was reported.  And it continued to reserve its rights as it investigated the roof damage.

Because Clear Blue did not clearly demonstrate an intent to relinquish its prompt notice right, the notice issue was still a live coverage dispute, which precluded an appraisal when Baytree moved for summary judgment.  *See Visca*, 387 So. 3d at 317; *Hernandez*, 172 So. 3d at 476–78.  For that reason, the district court did

not err in denying Baytree's motion for summary judgment on its appraisal claim.

*The Grant of Clear Blue's Motion to Exclude Calaci's Supplemental Opinion*

Next, Baytree argues that the district court abused its discretion in excluding Calaci's supplemental opinion about the weather near the Baytree buildings between the April 2021 storm and March 2022.  Because the supplemental opinion was not new, Baytree contends, there was no basis for the district court to find that it was untimely.  We disagree.

Under Federal Rule of Civil Procedure 26(a)(2)(D), "[a] party must" disclose expert testimony "at the times and in the sequence that the court orders."  Fed. R. Civ. P. 26(a)(2)(D).  "In order to make a proper disclosure, parties must, by the deadline, disclose the identity of their experts 'accompanied by a written report.'" *Guevara*, 920 F.3d at 717 (quoting Fed. R. Civ. P. 26(a)(2)(B)).  The report "must contain . . . a complete statement of all opinions the witness will express and the basis and reasons for them" along with "the facts or data considered by the witness in forming them."  Fed. R. Civ. P. 26(a)(2)(B)(i)–(ii).  If an expert wishes to materially change his or her opinions, then the party must file a supplemental disclosure.  *Id.* R. 26(e)(2).  If a party violates rule 26 by failing to timely disclose or supplement an expert opinion, rule 37(c) instructs that "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial,

unless the failure was substantially justified or is harmless." *Id.* R. 37(c)(1).

We applied these expert-disclosure rules to a supplemental opinion in *Guevara*. *See* 920 F.3d at 719–20. There, a party filed an expert affidavit after the close of expert discovery and styled it as "supplemental" to the expert's initial opinion. *Id.* at 715–16. The supplemental opinion added material in response to criticisms from the opposing party's expert. *See id.* at 719. We explained that "[c]ourts have broad discretion to exclude untimely expert testimony." *Id.* at 718 (citing *Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1252 (11th Cir. 2007)). We also made clear that "a party cannot abuse [the r]ule[s]" governing supplementing expert reports by submitting a supplemental opinion "to merely bolster a defective or problematic expert . . . report." *Id.* at 719 (citation modified). Because the supplemental opinion in *Guevara* was untimely and bolstered the expert's initial report, we concluded that the district court did not abuse its discretion in excluding it. *Id.* at 719–20.

We reach the same conclusion here. Calaci's initial report opined that the April 2021 storm "affected" the Baytree buildings, and he cited radar and ground information from April 2021 to assess the wind speed and hail size. But Calaci said nothing about the weather after April 11 and included no data for the months after the storm. Calaci's supplemental opinion, in contrast, explained that there were no significant weather events between April 2021 and March 2022—a period never mentioned in the initial report. His supplemental opinion didn't correct inaccuracies or add

information that was unavailable when the initial report was made. Rather, it sought to bolster the initial report by addressing the problem of intervening weather that could've caused the roof damage. In that way, it was an untimely new opinion and not a supplement to the initial report. *See id.*

Because Baytree does not dispute the district court's finding that Baytree had no substantial justification for the late filing, and because Clear Blue would be prejudiced by the untimely supplement, the district court had discretion under rule 37(c)(1) to exclude the supplemental opinion. *See id.* at 718–20. It was not an abuse of discretion to do so.

### The Grant of Clear Blue's Summary-Judgment Motion on the Appraisal and Breach-of-Insurance-Policy Claims

Finally, under the notice provision, Baytree was required to give Clear Blue "prompt notice of [any] loss or damage[,] [i]nclud[ing] a description of the property involved." The purpose of the notice provision was to "enable the insurer to evaluate its rights and liabilities, to afford it an opportunity to make a timely investigation, and to prevent fraud and imposition upon it." *See Perez v. Citizens Prop. Ins. Corp.*, 343 So. 3d 140, 142 (Fla. Dist. Ct. App. 2022) (citation modified).

In Florida, there is "a two-step process to determine whether an insurance company may deny an insured's claim on the ground that the insured failed to give the insurance company timely notice of the claim as required by an insurance policy." *Bensen v. Privilege Underwriters Reciprocal Exch.*, 401 So. 3d 390, 395 (Fla. Dist. Ct. App.

2023) (citing *Bankers Ins. Co. v. Macias*, 475 So. 2d 1216, 1218 (Fla. 1985)).  First, we ask whether the insured gave timely notice to the insurance company.  *Id.* (citing *LoBello v. State Farm Fla. Ins. Co.*, 152 So. 3d 595, 599 (Fla. Dist. Ct. App. 2014)).  The insurance company has the burden to show that the notice was untimely.  *1500 Coral Towers Condo. Ass'n v. Citizens Prop. Ins. Corp.*, 112 So. 3d 541, 544 (Fla. Dist. Ct. App. 2013) (citing *Soronson v. State Farm Fla. Ins. Co.*, 96 So. 3d 949, 953 (Fla Dist. Ct. App. 2012)).  If the insurance company does not meet its burden, "the analysis concludes at the first step."  *Bensen*, 401 So. 3d at 395 (citing *LoBello*, 152 So. 3d at 599).

But if the notice was not timely, we turn to the second step where "prejudice to the insurer is presumed."  *Id.* (citing *LoBello*, 152 So. 3d at 599).  At the second step, "[t]he insured may rebut the presumption of prejudice by alleging and showing that the late notice did not prejudice the insurer."  *1500 Coral Towers*, 112 So. 3d at 544.  "In other words, once the presumption of prejudice exists, the burden shifts to the insured to show that the insurer was not prejudiced by the insured's late notice."  *Id.* (citing *Soronson*, 96 So. 3d at 953).

Starting with the first step, Baytree does not dispute that Clear Blue met its burden.  Baytree's notice about the roof damage nine months after the April 2021 storm was untimely.  So we presume that Clear Blue was prejudiced by the late notice.

Baytree instead focuses on the second step, arguing that it offered summary-judgment evidence to overcome the presumption and create a jury issue on prejudice. We agree that it did.[1]

Clear Blue's engineering expert and field adjuster testified that Baytree's delay in reporting the roof damage didn't deprive them of the opportunity to investigate the cause or extent of the loss or the cost of repairs. Nor did the delay prevent the final adjuster from making her coverage determination. When the engineer was asked if anything prevented her from determining the "cause or extent" of the roof damage, she answered no. Later, after she was asked the same question, the engineer again rejected the premise. She explained there was no evidence the roof damage worsened between the April 2021 storm and her inspection in March 2022 and that she had all the information she needed to determine the cause of the loss.

The field adjuster gave similar testimony. When asked if anything stopped him from determining the "extent or cost" of the covered repairs, he said, "[n]o." And he testified that there was no evidence the roof damage had "materially changed" between the April 2021 storm and his inspection in March 2022; he had "everything [he] needed" to prepare his estimate; and he required no

---

[1] Baytree also argues that Clear Blue waived its reliance on the notice provision, but Baytree didn't raise the waiver argument during the second phase of the litigation, including in response to Clear Blue's summary-judgment motion. So Baytree cannot raise the waiver issue now for the first time on appeal. *See CSX Transp., Inc. v. Gen. Mills, Inc.*, 846 F.3d 1333, 1336 (11th Cir. 2017).

additional information to adjust the claim.  The final adjuster, too, testified that nothing hindered her from making a coverage determination.

Indeed, based on the engineer and field adjuster's investigation, Clear Blue did adjust the claim.  It issued a coverage determination, in which it told Baytree that only three of the buildings had shingle issues, the issues were minimal, and any damage was lower than the deductible amount.  And Clear Blue offered to appraise the shingle issues for the three buildings.

This evidence is similar to the evidence in *Stark v. State Farm Florida Insurance Co.*, 95 So. 3d 285 (Fla. Dist. Ct. App. 2012) and *Shapiro v. First Protective Insurance Co.*, 359 So. 3d 777 (Fla. Dist. Ct. App. 2023), where the Florida courts found there was a jury question on the prejudice issue.  In *Stark*, the insurance company's investigator explained that he could tell "there was storm damage to the insureds' roof."  95 So. 3d at 288.  Because he was able to determine the cause of the damage despite the delay, there was a genuine dispute about whether the presumption had been overcome that had to be decided by a jury.  *Id.* at 289.  Similarly, in *Shapiro*, the insureds' expert testified that he still could observe damage to the roof, and could determine the cause, even with the delay in reporting the loss.  359 So. 3d at 782.  This evidence, the Florida court held, was sufficient to create a jury issue on prejudice.  *Id.*

Clear Blue, in response, points to other Florida appellate decisions where there was no jury question on prejudice.  But the key difference in these other decisions is that there was evidence from

24-10889                Opinion of the Court                    21

the insurance company that it could not adjust the claim because of the delay.  Take *Navarro v. Citizens Property Insurance Corp.*, 353 So. 3d 1276 (Fla. Dist. Ct. App. 2023), for example.  There, the insurance company's field adjuster "attested he was unable to determine the cause of the damage due to the [years'-long] passage of time and the attempted repairs" to the property.  *Id.* at 1280.  Likewise, in *Hope v. Citizens Property Insurance Corp.*, 114 So. 3d 457 (Fla. Dist. Ct. App. 2013), the insurance company denied coverage because the nearly-four-year delay made it "unable to attribute any damage to a covered loss."  *Id.* at 458.

In *Perez*, too, the insurance company was "unable to make a coverage determination" because of the insured's delay in reporting the damage.  343 So. 3d at 142–44.  In *1500 Coral Towers*, the insurance company couldn't "investigate and evaluate" the claim because of the late notice.  112 So. 3d at 543.  And in *Bouchard v. Citizens Property Insurance Corp.*, 406 So. 3d 311 (Fla. Dist. Ct. App. 2025), there was "insufficient evidence to substantiate a loss related to [the storm]" because of the delay.  *Id.* at 312.[2]

Here, though, the insurance company's engineer, field adjuster, and final adjuster testified that they had the opportunity to investigate Baytree's roof damage, and still they were able to determine the cause, scope, and amount of the loss even with the delay.  As in *Stark* and *Shapiro*, this was enough to create a jury question on prejudice.  *See Stark*, 95 So. 3d at 288; *Shapiro*, 359 So. 3d at 782.

---

[2] *Sotolongo v. Safepoint Insurance Co.*, 404 So. 3d 487 (Fla. Dist. Ct. App. 2024) is a citation per curiam affirmance without any facts.

The district court erred in granting summary judgment for Clear Blue on the prejudice issue.

## CONCLUSION

In sum, we affirm the district court's denial of summary judgment for Baytree on its appraisal claim, as well as the district court's exclusion of Calaci's supplemental opinion. But we reverse the summary judgment for Clear Blue and remand for further proceedings consistent with this opinion.

**AFFIRMED IN PART; REVERSED AND REMANDED IN PART**.